STATE of Wisconsin, Plaintiff-Respondent,

v.

Kevin S. MEEHAN, Defendant-Appellant.

Court of Appeals

*No. 97–3807–CR. Oral argument February 6, 2001.—Decided April 17, 2001.*

## 2001 WI App 119

(Also reported in 630 N.W.2d 722.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Pamela Moorshead* of

*Buting & Williams, S.C.* of Brookfield. There was oral argument by *Pamela Moorshead.*

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general by *William C. Wolford,* assistant attorney general. There was oral argument by *William C. Wolford.*

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. WEDEMEYER, P.J. Kevin S. Meehan appeals from a judgment entered after a jury found him guilty of one count of second-degree sexual assault of a child and one count of attempted second-degree sexual assault of a child, contrary to WIS. STAT. §§ 948.02(2) and 939.32 (1995–96).[2] Meehan also appeals from an order denying his postconviction motion. He claims: (1) the trial court erroneously exercised discretion in allowing other acts evidence of a 1992 conviction for sexual assault of an adult; (2) the trial court erroneously exercised discretion in allowing the State to elicit testimony from a defense alibi witness about the details of the prior conviction; (3) the trial court erroneously exercised discretion when it allowed the State to read into the record the transcripts of the victim's testimony from two earlier proceedings three days after the victim's live testimony during the trial; and (4) the second count was multiplicitous to the first count and should be dismissed.

¶ 2. Because the trial court erroneously exercised its discretion in admitting the other acts evidence, because that error was compounded when the trial court allowed the cross-examination of a defense alibi witness to delve further into the details of

[2] All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

the other acts evidence, and because the trial court erroneously exercised its discretion when it allowed the State to introduce the victim's testimony from two earlier proceedings, we reverse the judgment and the order in part. We do conclude, however, that the two counts were not multiplicitous, and we affirm that part of the order.

## BACKGROUND

¶ 3. On January 1, 1996, fourteen-year-old Nickolas Z. was in the steam room of the West Allis Athletic Club. Nickolas testified that a young man approached him and grabbed his penis. Nickolas pushed the man's hand away and told him "no." The man again reached out to grab Nickolas's penis, but was unable to do so. Nickolas identified the perpetrator as Meehan.*

¶ 4. Meehan was charged with one count of second-degree sexual assault of a child and one count of attempted second-degree sexual assault of a child. Prior to trial, the State moved *in limine* to introduce Meehan's 1992 sexual assault conviction, which involved Meehan entering the bedroom of a twenty-three-year- old man, and rubbing the man's penis while he was sleeping. The trial court allowed the admission of this evidence over defense objection.

¶ 5. Meehan presented an alibi defense. He claimed to be home with his parents at the time of the assault. As a part of his alibi defense, Joseph Holmes, Meehan's significant other, testified about a twenty-minute phone call they had during the relevant time period. Cross-examining Holmes, the State asked about his knowledge of the facts relating to the 1992 sexual assault conviction. The defense objected, but the trial court permitted it.

¶ 6. In addition to Nickolas's trial testimony, the State moved to introduce the prior testimony of Nickolas during two earlier legal proceedings. Initially, the trial court indicated that the State would only be allowed to introduce certain portions of the earlier transcripts, but later reversed the ruling, and allowed the introduction of the entire testimony of Nickolas from the earlier proceedings to be dramatically read to the jury.[3]

¶ 7. The jury convicted Meehan of both counts. Meehan's postconviction motions were denied. He appealed to this court. We summarily reversed his conviction on the basis that the 1992 conviction had been erroneously admitted. The supreme court granted the petition seeking review of our decision, and then summarily vacated our decision, remanding the matter to this court with instructions to reconsider the case in light of its recent decision, *State v. Hammer*, 2000 WI 92, 236 Wis. 2d 686, 613 N.W.2d 629. We have followed those instructions.

## DISCUSSION

### A. *Admission of 1992 Conviction.*

¶ 8. Meehan first contends that the trial court erroneously exercised its discretion when it allowed the

---

[3] In this case, the term "dramatic reading" was used to denote the practice of having an individual play the role of the witness, actually sit in the witness chair, and read the witness's answers with some inflection. It was an option elected, over defense objection, in lieu of a plain reading, where one counsel simply reads to the jury both the questions and answers from a prior proceeding. Here, an assistant district attorney played the role of Nickolas during the dramatic reading.

State to introduce the evidence of his 1992 sexual assault conviction involving an adult. Decisions affecting whether to admit or exclude evidence are left to the discretion of the trial court. *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983). We will uphold a trial court's evidentiary decision if the court "exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record." *State v. Wollman*, 86 Wis. 2d 459, 464, 273 N.W.2d 225 (1979).

¶ 9. After considering WIS. STAT. § 904.04(2),[4] the trial court ruled that the prior conviction would be admitted. The State and Meehan reached an agreement that the following stipulation could be read to the jury:

> "The parties hereby stipulate that on January 22nd, 1992, at approximately three-thirty in the morning, the West Allis Police Department was dispatched to 8009 West Greenfield Avenue to investigate a report of a sexual assault.
>
> "Upon arrival there, the police spoke to Francis Schmidt, a man age twenty-three, who reported he had awakened in his home at that location to discover a man in his room rubbing his penis through his clothing and that the man had fled and Schmidt then called the police.
>
> "Schmidt stated that he has never seen that man before in his life.
>
> "The investigating officer reported that he found the defendant lying down in the front seat of a

---

[4] WISCONSIN STAT. § 904.04(2) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

car at the scene and it appeared to the officer that the defendant was hiding. The defendant was positively identified by Schmidt as the man who sexually assaulted him.

"The defendant was questioned about the above incident and he admitted that on the above date he did enter the residence at that location and observed the occupant there asleep and went into the room and rubbed the guy's penis. The guy told him to leave so he did.

"The defendant further stated that he has a bad cocaine and alcohol abuse problem and had had a lot to drink and had used cocaine on the night in question. The defendant further stated that he has been depressed for much of his life and he knows that he really needs help and doesn't know why he did this particular act.

"On May 8th, 1992, the defendant was convicted of second degree sexual assault for this offense."

¶ 10. In reviewing whether the trial court erroneously exercised its discretion in allowing in the other acts evidence, we apply a three-step test. *Hammer*, 2000 WI 92 at ¶ 22. The first step is whether the other acts evidence is offered for an accepted purpose under WIS. STAT. § 904.04(2), such as motive, intent, plan, etc. *Id.* The second step is whether the other acts evidence is relevant under WIS. STAT. § 904.01. *Id.* The third step is whether the probative value is "substantially outweighed by the danger of unfair prejudice." *Id.* In addition, we examine each of the three steps under the "greater latitude rule," which permits "the more liberal admission of other crimes evidence in sex crime cases in which the victim is a child." *State v. Davidson*, 2000 WI 91, ¶ 51, 236 Wis. 2d 537, 613 N.W.2d 606.

¶ 11. Here, the State argued that the prior conviction was relevant to Meehan's intent and motive to obtain non-consensual sexual arousal or gratification from young boys and men as part of his common plan or scheme to do so. Meehan contends that the other act was not relevant for that or any other acceptable purpose. He directs us to case law emphasizing the difference between assaults on adults as compared to preying upon children. *See, e.g., State v. Sonnenberg,* 117 Wis. 2d 159, 173, 344 N.W.2d 95 (1984) ("It would appear to be a dangerous analogy to conclude that, because a person sought to buy sexual favors from a twenty-five-year-old woman that there is, therefore, a greater likelihood that that person had the intent, motive, or plan of assaulting a fourteen-year-old child."). He also suggests that the other factual distinctions between the two cases support exclusion of the other acts evidence. He points out that the 1992 conviction case occurred in the middle of the night, in a private residence, while the victim was sleeping. Here, the instant act occurred during the day, in a public place, while the victim was in a steam room. These differences, Meehan contends, demonstrate the lack of time, place and circumstance, which are considerations in admitting this type of evidence. *See State v. Hall,* 103 Wis. 2d 125, 142–43, 307 N.W.2d 289 (1981).

¶ 12. We originally agreed with Meehan's argument when this case first came before us for review. Our supreme court, however, vacated that decision and directed us to reconsider this case in light of *Hammer.* In *Hammer,* our supreme court affirmed the admission of other acts evidence in a sexual assault case, ruling that it could be admitted for proving identity, mode or method of operation, motive, and absence of mistake.

*Hammer*, 2000 WI 92 at ¶¶ 24–26. The trial court so ruled on the basis that in "sex crime case[s], the admissibility of other acts evidence must be viewed in light of the greater latitude rule." *Id.* at ¶ 23. The court found that the other acts evidence and the crime charged in *Hammer* were similar because each involved touching victims while they were sleeping, all the victims were males around the age of majority, and all occurred during overnight visits. *Id.* at ¶¶ 31, 34. The court was not persuaded by the alleged distinction that the prior act involved an eighteen-to-twenty-year-old adult, and that the charged crimes involved minors. *Id.* at ¶ 32. In essence, our supreme court concluded in *Hammer* that the adult-minor distinction does not preclude the admission of the other acts evidence. *Id.* at ¶ 32. The court reached this conclusion for two reasons. First, the prior victim was between eighteen and twenty years old, and the current victims were fourteen, sixteen and seventeen years old. *Id.* at ¶¶ 31–32. Thus, the court concluded that, with the exception of the fourteen-year-old, "the ages of the young people involved were somewhat near the age of majority." *Id.* at ¶ 32. Second, the court concluded that the adult-child distinction "is balanced by the similarity between the two events." *Id.* at ¶ 33.

¶ 13. Having considered the supreme court's analysis in *Hammer*, we now must apply the three-step *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W. 2d 30 (1998) other acts test as set forth above. The first step is to determine whether there was any acceptable purpose to admit the prior conviction in Meehan's case. *Id.* at 772. The State suggests that the evidence of the 1992 conviction was relevant to intent, motive, common scheme, and plan. The State contends that the prior act demonstrates Meehan's intent and motive to touch

other males for the purpose of sexual gratification. Under the greater latitude rule, we agree that the earlier conviction could be admitted for this purpose. Similarly, the earlier conviction could be admitted to show Meehan's plan to touch male victims for his own sexual gratification. Accordingly, the first step of the *Sullivan* test is satisfied.

¶ 14. The next step is whether the 1992 conviction was relevant; that is, whether under WIS. STAT. § 904.01, it relates to a fact or proposition that is of consequence to the determination of the action and if it has probative value. *Id.* " 'The measure of probative value in assessing relevance is the similarity between the charged offense and the other act.' Similarity is demonstrated by showing the 'nearness of time, place, and circumstance' between the other act and the alleged crime." *Hammer*, 2000 WI 92 at ¶ 31 (citations omitted). Stated otherwise, the greater the similarity between the two acts, the greater the relevance and probative value. Here is where the State's argument fails. In *Hammer*, the supreme court found that the adult-child distinction did not impact on probative value because the victims, with one exception, were all near the age of majority. *Id.* at ¶ 32. That is not the case here. The victim in the other act was twenty-three years old, well past the age of majority. The victim in the charged act was a fourteen-year-old boy—four years away from the age of majority. This distinction is significant.

¶ 15. Moreover, unlike the "mirror image" acts in *Hammer*, the other act here was substantially dissimilar from the charged act. The other act occurred in a private bedroom following an illegal entry, in the middle of the night, while the victim was sleeping; and the sexual contact was through the victim's clothes. The

charged act is drastically different: it occurred in a public place, during the day, while the victim was awake; the sexual contact was directly to the skin, and no illegal entry was involved. These differences greatly reduce the probative value of the 1992 conviction, and lean toward making the earlier act propensity evidence. The State suggests that the two acts are similar in several ways; i.e., both victims were young male strangers, both involved isolated victims in places close to the perpetrator's home, neither incident involved force, and the sexual contact in both was with the victim's penis. Even with the application of the greater latitude rule, we cannot conclude that this suggested list of similarities overcomes the greater dissimilarities. The State's list presents factors or similarities that are, for the most part, common to most sexual assaults.

¶ 16. For instance, stating that both cases involve young males is not entirely accurate for purposes of our analysis. We see a tremendous difference between a twenty-three-year-old male, who is post-pubescent and has had the opportunity to mature to adulthood, and a fourteen-year-old boy, who is still facing that transformation. In addition, most sexual assaults involve an isolated victim.

¶ 17. Based on the foregoing, we conclude that the two acts do not share sufficient common characteristics to allow the admission of the 1992 conviction. The probative value of the other act is slim given the substantial distinctions between the two cases. Similarly, in addressing the third step in the *Sullivan* test, we conclude that any slight probative value of the 1992 conviction is substantially outweighed by the danger of unfair prejudice. *Sullivan*, 216 Wis. 2d at 772–73.

133

Because the two acts present significantly different characteristics, introducing the other act presents a very real potential that the jury would conclude that because Meehan committed a bad act in the past, he necessarily committed the charged crime. Accordingly, we conclude that the trial court erroneously exercised its discretion when it admitted the 1992 conviction into evidence.

## B. Cross-examination of Joseph Holmes.

¶ 18. Meehan next contends that the trial court erroneously exercised its discretion when it allowed the State to cross-examine Joseph Holmes regarding the facts of the 1992 sexual assault conviction. The State concedes that this line of questioning was not relevant, but argues that it was harmless. *See State v. Dyess*, 124 Wis. 2d 525, 543–44, 370 N.W.2d 222 (1985). An error is harmless if there is no reasonable possibility that the error contributed to the conviction. *Id.* at 543–44.

¶ 19. Holmes was called as part of the defense's case to support Meehan's alibi. Holmes testified that he received a phone call from Meehan on the date of the alleged assault at approximately 3:40 p.m., which lasted for twenty minutes. During the cross-examination of Holmes, the prosecutor questioned him about his knowledge of the 1992 conviction and what Meehan had told Holmes about the conviction.[5] Despite objec-

---

[5] The full text of that portion of the cross-examination follows:

Q And did he ever discuss with you the facts of his prior case in '92?

A No.

Q When did that come to your attention?

A After he was arrested.

tions, the trial court allowed this testimony into evidence.

Q So that was the first you heard of it?

A Yes.

Q And '92 would have been before you knew him?

A Yes.

. . . .

Q So who first told you after the defendant's arrest about this '92 prior sexual assault case?

A I think a detective.

Q And so you've discussed it with [Meehan]?

A Yes.

Q And asked him why he never told you about this?

A Yes.

Q And you weren't aware in the three and-a-half years that you've known him that he had a probation officer to report to?

A I was aware.

Q But you thought it was for some other matter?

A Yes.

Q And that's because [Meehan] told you that it was for something different?

A Yes.

Q What did [Meehan] tell you?

A Drugs.

Q You now know that not to be true, correct?

A Yes.

Q So he didn't tell you the truth about that, did he?

A No.

Q And so when you spoke to him about . . . this, then did he admit to you that it was actually a sexual assault?

A Yes.

Q And did he tell you that he went into the home of a stranger and assaulted a sleeping man?

A I don't remember the exact things.

¶ 20. The State concedes that its admission was erroneous, but argues harmless error. We cannot agree. We have concluded that admission of the 1992

Q Were you aware that the victim in that case was another male?

A Yes.

Q Did he . . . tell you that?

A Yes.

Q And did he tell you the man was someone he didn't even know?

A I'm not sure. I don't remember.

Q Did he tell you that the man was asleep and awakened to [Meehan] in his bedroom —

. . . .

Q — rubbing on his penis?

. . . .

Q Mr. Holmes, did [Meehan] tell you that what happened in that case was that a man woke up in the middle of the night to find a stranger, your friend . . . Meehan, in his bedroom rubbing on his penis?

A I don't remember the exact things he said. I don't remember.

Q What did [Meehan] tell you he did that resulted in him being convicted of a sexual assault?

A I was just aware that it involved some guy. I was never really informed of the exact details.

Q And you must have asked him —

A No.

Q This must have come as somewhat of a shock to you that when you thought your lover was on probation only for drugs and then found out it was a sexual assault, correct?

A Yes.

Q Well, you must have asked him, Mr. Holmes —

A Yes.

Q — about what happened?

A (Witness nods head.)

Q And what did he say happened?

136

conviction was erroneous. Thus, continued focus on the 1992 conviction and the details of the crime further compounded that error. We cannot say that there is no reasonable possibility that the further discussion about the 1992 conviction had no effect on the verdict.

¶ 21. Further, even if the 1992 conviction could have been properly admitted, using this evidence on cross-examination was improper. Other acts evidence is admitted for a specific purpose. Here, arguably, the evidence was admitted to show motive, intent, or plan. The evidence cannot be admitted or used to prove bad character or propensity to commit crimes. The cross-examination of Holmes regarding the 1992 conviction was clearly used to attack Meehan's character—to show that he lied and concealed this information from his significant other. This was improper.

¶ 22. Using the 1992 conviction evidence in this manner intensified the jury's focus on the earlier crime, forced the defense to address the reason why Meehan did not disclose the 1992 conviction to Holmes, and forced the defense to defend Meehan's character. The admission of this evidence during cross-examination intensified the erroneous initial admission of the other acts evidence.

---

A He said it involved some guy and he was doing it just for drugs and that's as far as it went.

Q And you've never seen the police reports or anything of that nature on that case?

A No.

Q And so you're not aware of anything more about it except what [Meehan] told you?

A Yes.

## C. Admission of Victim's Prior Testimony.

¶ 23. Meehan also claims that the trial court erroneously exercised its discretion when it allowed the State to dramatically read into the record Nickolas's prior testimony from two earlier legal proceedings.[6] A trial court's evidentiary rulings are reviewed under the erroneous exercise of discretion standard. *See State v. Alsteen*, 108 Wis. 2d 723, 727, 324 N.W.2d 426 (1982). If a trial court applies the proper law to the established facts, we will not find a misuse of discretion if there is any reasonable basis for the trial court's ruling. *Id.*

¶ 24. Three days after Nickolas appeared in court and testified in person during the trial, the State indicated that it intended to read into the record Nickolas's prior testimony from the preliminary hearing and the probation revocation hearing in its entirety. Meehan objected, arguing that allowing the entire testimony would be tantamount to allowing Nickolas to testify twice. The trial court initially agreed, and directed the State to introduce only selected parts. A short time later, however, under the State's suggestion that introducing selected parts would violate the rule of completeness, the trial court reversed itself and allowed the entire testimony to be read dramatically to the jury.

¶ 25. The trial court admitted the entire prior testimony under two theories: (1) the testimony consti-

---

[6] In support of his argument on this issue, Meehan's counsel cited *State v. Gibson*, No. 96–1448, unpublished slip op. (Wis. Ct. App. April 9, 1997); 210 Wis. 2d 498, 568 N.W.2d 321 (Ct. App. 1997). We caution counsel that non-published cases are not to be cited as authority. *See* WIS. STAT. § 809.23(3).

tuted prior consistent statements under WIS. STAT. § 908.01(4)(a)2; and (2) the testimony could be admitted for the sake of completeness. We agree with Meehan that the trial court's decision was erroneous under either theory. The general rule is that prior consistent statements are not admissible because they are hearsay. Section 908.01(4)(a)2 provides an exception to the general rule under certain circumstances. Here, the State failed to demonstrate that Nickolas's entire testimony was an admissible prior consistent statement under § 908.01(4)(a)2. Some of Nickolas's prior testimony was consistent with his trial testimony, some of it was inconsistent, and some of it covered material that Nickolas did not address during the trial. Moreover, prior consistent statements are admissible only when offered to rebut an express or implied claim of recent fabrication or improper influence or motive. *See State v. Peters*, 166 Wis. 2d 168, 176, 479 N.W.2d 198 (Ct. App. 1991). There was no such claim in this case.

¶ 26. Similarly, the entire prior testimony cannot be admitted under the rule of completeness. The rule of completeness requires that a statement be admitted in its entirety " 'when this is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact, or to ensure a fair and impartial understanding of the admitted portion.' " *State v. Sharp*, 180 Wis. 2d 640, 653–54, 511 N.W.2d 316 (Ct. App. 1993) (citation omitted). There is no indication that admitting Nickolas's entire prior testimony somehow satisfies this standard. *See United States v. Wright*, 826 F.2d 938, 946 (10th Cir. 1987) ("It would be puerile to suggest that if any part of a statement is [to] be admitted the entire statement must be admitted.").

The State needed to show how portions of the statement that have been admitted would tend to mislead the jury if additional portions of the statement were not admitted. *Sharp*, 180 Wis. 2d at 653. The State failed to do so.

¶ 27. Accordingly, we conclude that the trial court erroneously exercised its discretion in allowing the entire prior testimony in without first determining whether the proper standards had been met.

¶ 28. We also conclude that the admission of the prior testimony, which was read dramatically to the jury, constituted reversible error. In essence, the jury heard Nickolas's testimony multiple times: once through Nickolas's live testimony, and twice more, through the dramatic reading of the prior testimony.

### D. *Multiplicity.*

¶ 29. Finally, Meehan argues that the two charges against him were multiplicitous. He claims that his conviction of both counts violates double jeopardy. We disagree.

¶ 30. In order to determine whether two charges are multiplicitous, we apply a two-step test. *State v. Bergeron*, 162 Wis. 2d 521, 534, 470 N.W.2d 322 (Ct. App. 1991). First, we must address whether or not the two charges are identical in law and in fact; second, we must consider whether the legislative intent was to allow the prosecution under the statute in question. *Id.* Our review is *de novo. Id.*

¶ 31. The two charges at issue are clearly not identical in law. One is second-degree sexual assault of a child, contrary to WIS. STAT. § 948.02(2), and the other is attempted second-degree sexual assault of a child,

contrary to WIS. STAT. §§ 948.02(2) and 939.32. The elements of the two charges are different. However, Meehan contends that the conduct he was convicted of was identical in fact because it was one continuous act, rather than separate acts.

¶ 32. In *Harrell v. State*, 88 Wis. 2d 546, 277 N.W.2d 462 (Ct. App. 1979), we addressed "whether an episode of sexually assaultive behavior constitutes a single offense or multiple offenses." *Id.* at 572. In making such determination, we consider the nature of the act, the time interval between acts, the place of the acts, intent, the effect of cumulative punishment, muscular contraction, and the number of victims. *Id.* at 572–74.

¶ 33. The acts involved in this case took place in the same place and involved the same victim. However, the remaining factors support a finding that the two acts were separate offenses. Nickolas testified that when Meehan put his hand on Nickolas's penis, Nickolas pushed his hand away and said "no." Then Meehan asked, "[w]hat's the matter. Do you think somebody will come in and find us?" Nickolas said "no." Nickolas stated that Meehan tried to grab him again but, because Nickolas pushed his hand away, Meehan did not succeed.

¶ 34. The nature of the two acts was different because the attempted sexual assault was foiled by the victim's resistance. There was some time separation between the two acts, sufficient for a question and answer. Further, Meehan had an opportunity to reconsider his course of action because Nickolas told him "no" after the first act. *See State v. Carol M.D.*, 198 Wis. 2d 162, 170, 542 N.W.2d 476 (Ct. App. 1995) ("Offenses are separated in time if the defendant had time to reconsider his . . . course of action between each

offense."). Accordingly, we conclude that the two acts were not identical in fact.

■

¶ 35. In addressing whether the legislature intended separate punishments for the two counts, we are guided by our analysis in *Bergeron*:

> Where a statute intends to protect multiple and varied interests of the victim and the public, multiple punishments are appropriate. Moreover, where the evidence shows the defendant committed separate volitional acts, it is appropriate to punish the defendant separately for each offense. In a sexual assault involving multiple offenses, there are multiple denigrations of the victim's integrity and multiple threats to the victim's safety. Thus, we conclude that the legislature intended to allow separate punishments for each offense legitimately charged under sec. 940.225(2)(a), Stats.

*Bergeron*, 162 Wis. 2d at 535–36 (citations omitted). Because we have concluded that the two acts were separate acts, we must conclude that each was legitimately charged and, therefore, the legislature intended separate punishments. *See State v. Grayson*, 172 Wis. 2d 156, 160, 493 N.W.2d 23 (1992). Therefore, we reject Meehan's contention that the charges in this case were multiplicitous.[7]

---

[7] Meehan also claims that the trial court erred when it dismissed Juror Dietz based on the non-verbal body movements and facial expressions made during the testimony of Meehan's father. Meehan asserts that removing Dietz violated his Sixth Amendment right to a fair and impartial jury, his right to fundamental fairness under the due process clause, and his statutory right to have any extra jurors removed by random lot at the close of the case pursuant to WIS. STAT. § 972.10.

*By the Court.*—Judgment reversed; order affirmed in part and reversed in part.

Juror Dietz had caught the attention of the prosecutor a few days into the trial because, she advised the trial court, when she objected to certain testimony as irrelevant, Juror Dietz said, "Yes, it is." The trial court conducted *voir dire* of Juror Dietz, who could not remember the incident, although he admitted that he may have been so caught up in the testimony as to have uttered the statement. The State moved to remove Juror Dietz at that point, but the trial court denied the motion because it was not satisfied that Juror Dietz had actually uttered the statement. Neither the trial court nor the court reporter heard it.

Just before the submission of the case to the jury, the State again moved to remove Juror Dietz from the jury. The basis for the motion was testimony from a police detective, who alleged that Dietz was nodding his head in agreement during the alibi testimony of Meehan's father, and that when the trial court sustained an objection by the prosecutor, Juror Dietz grinned. The trial court granted the State's motion to strike Juror Dietz, ruling:

> ... I saw [the nodding]. And ... I've never seen anything like it in my years on the bench, the nature of the animation, the open animation during the direct of the father.
>
> ....
>
> And it was so extreme that I have to — I'm willing to impune [sic] to that ... he probably is biased, and I'm going to grant the state's motion that he be stricken and we'll simply call his name out along with the other alternate ....

A criminal defendant is guaranteed the right to trial by an impartial jury. *Hammill v. State*, 89 Wis. 2d 404, 407, 278 N.W.2d 821 (1979). Prospective jurors are presumed impartial, and the challenger to this presumption bears the burden of proving bias. *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). Juror bias may be actual or implied. *State v. Wyss*, 124 Wis. 2d 681, 730,

370 N.W.2d 745 (1985). Whether a prospective juror is biased and should be dismissed for cause is a matter left to the trial court's discretion. *State v. Louis*, 156 Wis. 2d 470, 478, 457 N.W.2d 484 (1990).

What happened in this case disturbs this court. Without any *voir dire*, the trial court struck a juror based on nonverbal reaction during a witness's testimony. The dismissal was based on observations of the juror's demeanor during the trial by a police detective, the prosecutor, and the trial court. We strongly discourage trial courts from striking jurors for cause based on nonverbal expressions made throughout the course of the trial without conducting a proper *voir dire* to determine if the juror is unable to be impartial. We need not directly decide this issue, however, because our decision on the other issues disposes of this appeal. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (we decide cases on the narrowest possible grounds).