# COURT OF APPEALS
## DECISION
## DATED AND FILED

## July 19, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1764-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2016CF659**

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

MICHAEL J. KOENIG,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Manitowoc County: MARK ROHRER, Judge. *Affirmed*.

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Michael J. Koenig appeals a judgment of conviction for second-degree sexual assault and attempted second-degree sexual assault of his stepdaughter. He contends the circuit court erroneously exercised its discretion by allowing other-acts evidence concerning his approximately twenty-year-old conviction for sexually assaulting his sister. He also argues his trial attorney provided constitutionally ineffective assistance. We reject these arguments and affirm.

## BACKGROUND

¶2      On April 24, 2015, police received a report that Koenig had inappropriately touched his fifteen-year-old stepdaughter TNL.[1] During a subsequent police interview, TNL disclosed five incidents of inappropriate touching or attempted touching. Four of those incidents were charged, while the fifth incident—which allegedly occurred in Iowa—was the subject of a successful motion in limine from the State to admit it as other-acts evidence.

¶3      At trial, TNL testified that in 2012, when she was eleven or twelve years old, Koenig came into her room in the early morning hours, sat down on the bed next to her, and remarked about how TNL's mother needed to dress differently to "make her more younger looking." Koenig then began massaging TNL's back and legs, also touching "the bottom of [her] butt" and breasts.

---

[1] Consistent with the policy underlying WIS. STAT. RULE 809.86 (2021-22), we refer to victims using initials, as the parties have done in their briefing.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶4      The second incident occurred a few months later while TNL was sleeping on the living room couch.  Koenig sat near her and started to rub her back.  TNL awoke, told Koenig to stop, and pulled a blanket over herself so she could not be touched.  Koenig persisted and started to pull the blanket off her and rub her arm and back, pleading with her to "just let [him] do this."  TNL got up from the couch and left the room.

¶5      The third incident occurred on the couch again, sometime between several months and one year later.  TNL came downstairs and saw Koenig on the couch in his underwear.  Koenig asked her to sit on his lap.  TNL testified she sat on his knee and he "grabbed [her] waist and put [her] on top of him and started humping me."  TNL could feel his erect penis against her.  TNL got up and told him she did not like his behavior.  Koenig then grabbed TNL by the arm and said, "[J]ust let me do this."  When TNL told him no, he tried unsuccessfully to bribe her with $50.  TNL testified she told her mother about this incident about a week later, but was met with a negative reaction.

¶6      The fourth incident occurred on Mother's Day in 2014.  TNL testified Koenig entered her bedroom where she was sleeping with her half-sister, EKK.  Koenig sat down on the edge of the bed, took some blankets off her, and tried to position TNL on her stomach.  TNL asked him to stop, but Koenig persisted, again saying, "Please, just let me do this."  Koenig then tried to drag her out of the room, but TNL grabbed hold of a bunk bed.  She let go at some point, causing her and Koenig to topple into a nearby Christmas tree, breaking its lights.  Koenig ran off, and TNL returned to the bed with EKK until her mother got home from work.

¶7 Based on TNL's allegations, Koenig was charged with two counts of second-degree sexual assault and two counts of attempted second-degree sexual assault. A jury acquitted Koenig of one sexual assault charge and one attempted sexual assault charge, convicting him of the remaining two charges. The circuit court imposed concurrent sentences totaling eight years' initial confinement and twelve years' extended supervision.

¶8 Koenig sought postconviction relief, raising numerous claims of ineffective assistance of trial counsel. Following a ***Machner*** hearing,[2] the circuit court rejected each claim, concluding that Koenig had failed to prove either deficient performance on the part of his trial attorney or prejudice stemming from the alleged deficiency. Koenig now appeals.

## DISCUSSION

¶9 On appeal, Koenig first challenges the circuit court's evidentiary determination that the State could present other-acts evidence in the form of testimony from Koenig's sister about instances when Koenig had sexually touched her when they were teenagers. Second, Koenig raises numerous allegations of ineffective assistance of counsel. For the reasons that follow, we reject these claims.

*I. Other-Acts Evidence*

¶10 Pretrial, the State moved to introduce evidence that in the early 1990s Koenig had molested his sister. His sister testified at trial that the assaults

---

[2] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

had spanned years, starting while she was in grade school.[3] She stated Koenig had touched her inappropriately and had rubbed his erect penis against her body. The circuit court applied the greater latitude rule, *see* WIS. STAT. § 904.04(2)(b)1., and concluded that the evidence was admissible as other-acts evidence pursuant to *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998).

¶11 *Sullivan* set forth a three-step framework for analyzing other-acts evidence, which is generally not admissible to establish a person's character in order to show that the person acted in conformity therewith. WIS. STAT. § 904.04(1). Under *Sullivan*, the proponent of the evidence must first demonstrate the evidence is offered for an acceptable purpose. Here, the circuit court concluded the two permissible purposes for the evidence were motive and intent.

¶12 Second, the proponent of the other-acts evidence must demonstrate that the evidence is relevant under WIS. STAT. § 904.01. The court noted that there were some factors weighing against admissibility—namely, the significant time gap between the two incidents and the greater age difference between Koenig and his alleged victim in the present case. The court determined, however, that the similarities were more compelling:

> We have a child victim in both of the cases …. Also we have a familial relationship in this situation—we have a stepdaughter situation here … and a sister in the 1995 incident. Another similarity is the defendant is alleged to have a sexual relationship over an extended period of time[,] which is something going on in this case.
>
> In both incidents we have a defendant rubbing himself in a sexual manner against the victim. Also in both instances there were no adults around when these incidents allegedly took place. And most of these incidents as I

---

[3] Koenig is approximately five years older than his sister.

> understand it there's no sexual intercourse but rather sexual contact.
>
> In addition there is begging behavior in both instances and also from the Court's perspective that the defendant is alleged to not take no as an answer.

Based on the foregoing, the court determined the other-acts evidence had a tendency to make it more probable that Koenig committed the present offenses.

¶13    Third, the circuit court considered whether the evidence should be excluded under WIS. STAT. § 904.03 because its probative value was substantially outweighed by unfair prejudice, confusion of the issues, or other similar considerations.   The court concluded the evidence satisfied this prong of the *Sullivan* framework because the court could mitigate the prejudicial impact of the evidence by crafting a curative instruction.

¶14    On appeal, Koenig's primary argument is that the past and current acts of sexual touching were so dissimilar that the greater latitude rule does not apply and the evidence regarding the 1990s events was both irrelevant and unfairly prejudicial.   Koenig emphasizes the approximately twenty-year time gap between the past and current acts and the greater age disparity between him and his victim in the current case.

¶15    We review a circuit court's evidentiary decision for an erroneous exercise of discretion.[4]   *State v. Meehan*, 2001 WI App 119, ¶8, 244 Wis. 2d 121, 630 N.W.2d 722.   We will uphold the court's determination if the court exercised

---

[4] Koenig uses the phrase "abuse of discretion."   Our supreme court abandoned that terminology in 1992, replacing it with the phrase "erroneous exercise of discretion."   *See, e.g.*, *Shirk v. Bowling, Inc.*, 2001 WI 36, ¶9 n.6, 242 Wis. 2d 153, 624 N.W.2d 375.

its discretion in accordance with accepted legal standards and in accordance with the facts of record. *Id.*

¶16    The acts were sufficiently similar to allow for a reasonable determination that the greater latitude rule applied. Similarity for purposes of WIS. STAT. § 904.04(2)(b) is measured by assessing the nearness of time, place and circumstance between the other act and the alleged crime. *See Meehan*, 244 Wis. 2d 121, ¶14. The circuit court adequately considered the differences Koenig raises on appeal and concluded they should not be given controlling weight in light of the other significant similarities between the acts. Contrary to Koenig's argument, age differences between the defendant and the victim are not dispositive to the *Sullivan* analysis, *State v. Hammer*, 2000 WI 92, ¶32, 236 Wis. 2d 686, 613 N.W.2d 629, nor is remoteness in time of the other acts, *State v. Mink*, 146 Wis. 2d 1, 16, 429 N.W.2d 99 (Ct. App. 1988). The court's reasoned analysis balancing the various factors is the hallmark of an appropriate exercise of discretion. *See Mink*, 146 Wis. 2d at 16-17.

¶17    We also conclude the circuit court's application of *Sullivan* was an appropriate exercise of discretion.[5] Koenig concedes that the evidence was admitted for a proper purpose other than as propensity evidence. As set forth above, the circuit court's discussion of the similarities between the current offenses and the other acts was adequate to establish the relevance and probative value of the other-acts evidence under WIS. STAT. § 904.01. Finally, Koenig's assertion that the other-acts evidence should have been excluded under WIS. STAT.

---

[5] Where applicable, the greater latitude rule applies to the entire analysis of whether evidence of a defendant's other acts was properly admitted at trial. *State v. Hammer*, 2000 WI 92, ¶23, 236 Wis. 2d 686, 613 N.W.2d 629.

7

§ 904.03 is cursory and undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶18   Additionally, the court concluded any possibility of unfair prejudice could be mitigated through jury instructions, and it twice gave cautionary instructions to the jury regarding the proper use of the other-acts evidence.  In all, there is no basis to conclude the circuit court erroneously exercised its discretion when admitting the other-acts evidence from the 1990s.

## II.  Ineffective Assistance of Counsel

¶19   Koenig also advances multiple allegations of ineffective assistance of counsel.  The Sixth Amendment guarantees a defendant the effective assistance of counsel.  *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838. To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant.  *Id.*, ¶25; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984).  If the defendant fails to establish either prong, we need not address the other. *Savage*, 395 Wis. 2d 1, ¶25.

¶20   To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Id.*, ¶28.  We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances.  *Id.*  Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different.  *Id.*, ¶32.

¶21     We review an ineffective assistance of counsel claim using a mixed standard of review. *Id.*, ¶25. The circuit court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo whether counsel's conduct constitutes constitutionally ineffective assistance. *Id.*

### A. Failure to Call Character Witnesses

¶22     Koenig asserts his trial attorney was constitutionally deficient for failing to call character witnesses to testify on his behalf. Those witnesses would purportedly have testified that Koenig was a truthful and honest person. He contends that such witnesses were both permitted under WIS. STAT. § 906.08(1) and necessary to bolster his credibility.

¶23     At the *Machner* hearing, Koenig's trial attorney testified he thought about calling character witnesses but considered it a "rookie mistake" with "huge down side." Koenig's trial counsel stated that he expected the prosecutor to cross-examine any character witnesses by asking whether Koenig had been forthright with them about molesting his sister. He thought Koenig's testimony went remarkably well and the jury had a "good view of him," and he wanted to avoid giving the prosecutor the opportunity to put an "exclamation point" on Koenig's earlier abuse of his sister and setting the prosecutor up with a "devastating closing argument." The circuit court regarded these as reasonable strategic decisions and held trial counsel did not perform deficiently for failing to call character witnesses on Koenig's behalf.

¶24     On appeal, Koenig argues his trial counsel had an irrational fear of the prosecutor inquiring about the prior sexual assaults of his sister during the cross-examination of character witnesses, as such questioning would not have

been permitted under WIS. STAT. § 906.08(2). *See State v. Felton*, 110 Wis. 2d 485, 502, 329 N.W.2d 161 (1983) (holding that an attorney's strategic decisions "must be based upon rationality founded on the facts and the law"). Specifically, Koenig contends that the prior sexual assaults were remote in time and questioning about them would not have been probative of his truthfulness.

¶25 We agree with the circuit court's assessment when denying postconviction relief. WISCONSIN STAT. § 906.08(2) would not have clearly foreclosed any inquiry on cross-examination regarding the prior sexual assaults. Remoteness in time under § 906.08(2) is, essentially, a relevancy determination. *See State v. Sonnenberg*, 117 Wis. 2d 159, 170, 344 N.W.2d 95 (1984). Given the court's other-acts determination, trial counsel could have reasonably feared that the court would permit cross-examination that asked the character witnesses whether they were aware of Koenig's prior sexual assaults and whether he had been truthful about his conviction. Indeed, Koenig's postconviction counsel conceded at the *Machner* hearing that during cross-examination the prosecutor could "potentially challenge [character witnesses] on things that they may or may not know about Mr. Koenig." Additionally, Koenig's trial counsel testified that even if he successfully objected, the question alone would have achieved the prosecutor's objective to create doubt about how well the character witness knew Koenig. In all, Koenig has failed to establish deficient performance on this ground.

### B. Failure to Impeach EKK's Testimony

¶26 Next, Koenig argues his trial attorney should have done more to challenge EKK's testimony at trial that she saw Koenig trying to get TNL out of the bed during the Mother's Day 2014 incident. Koenig faults his trial counsel for

failing to effectively cross-examine EKK using recorded law enforcement interviews in which EKK stated that TNL told her that Koenig had been in the room. Koenig argues this would have undercut her trial testimony by suggesting that EKK had not, in fact, seen Koenig during the incident, but had relied on what TNL told her.

¶27　Koenig also faults his trial counsel for failing to call TNL's mother (Koenig's wife) to testify during the trial. During the postconviction hearing, his wife testified that when she returned home from work in the early morning hours, she saw the Christmas tree on the floor and asked TNL what happened. TNL was not responsive and she asked whether "it happen[ed] again," meaning whether Koenig had "done anything." TNL replied "yes," and Koenig's wife then asked EKK what had happened. According to Koenig, his wife would have testified that during their conversation, EKK denied seeing Koenig in the room that evening.

¶28　We conclude Koenig has failed to demonstrate his trial counsel performed deficiently in the foregoing ways. At the ***Machner*** hearing, trial counsel testified that his assessment was that EKK was "probably fourth, maybe even fifth" in terms of damaging witnesses. Trial counsel's recollection was that EKK did not make a clear, affirmative statement during the police interviews that she had not seen Koenig in the room that night. And he testified he would not have used the video recordings of EKK at trial, because doing so "would have put emotion back into the case that I really did not want."

¶29　On that point, Koenig's trial attorney testified that EKK was a "very emotional" witness who did not want to be there testifying against her father. Counsel perceived her testimony as "damaging," particularly on cross-examination when he was able to elicit a few helpful things but EKK offered many

11

other things that were not helpful. Specifically as to EKK's testimony that she saw Koenig in the room that night, counsel asked EKK whether she recalled telling the interviewing detective that TNL told her Koenig was in the room, but she did not see him herself. EKK responded, "No. He was there." Ultimately, Koenig's attorney believed the jury was "very sympathetic" to EKK, and he decided to terminate the cross-examination because it was not helping the defense.

¶30 Koenig's trial counsel also discussed his strategy with respect to the cross-examination of the detective who interviewed EKK. He acknowledged he could have asked the detective about EKK's statements that Koenig had been present in the room. However, counsel testified—and the trial transcript bears out—that the detective remembered very little about the investigation and his memory needed constant refreshing with the information contained in police reports. Koenig's counsel testified his perception was that the prosecutor "went in with pretty much the minimum [evidence] that she could," and counsel's overall strategy was to not "mess that up by throwing in other things"—particularly when he believed the defense was successfully making an emotional appeal to the jury.

¶31 Trial counsel's decision not to call Koenig's wife was also supported by reasonable strategic considerations. Counsel testified his "biggest decision … in the case" was whether to call her as a witness. He made that decision after Koenig's testimony, which he thought went well. Counsel testified Koenig's wife had made a "heartbreaking" decision to choose to believe her husband over her own daughter, and he worried her testimony would come off as "harsh" and "defensive." Counsel noted she had also been subpoenaed by the prosecutor, and he was concerned about her inability to answer during pretrial conversations why she trusted her husband and not her daughter. In all, trial counsel had to balance her potentially positive direct testimony with the risks of cross-examination that he

had no control over. Koenig has failed to demonstrate that his attorney struck an unreasonable balance in declining to call his wife as a witness.

### C. Failure to Challenge the Timeline of the Mother's Day Incident

¶32    Koenig next argues that his trial attorney did not do enough to create doubt about the Mother's Day incident based upon purported inconsistencies about when it occurred. Koenig asserts his attorney should have presented witnesses who could establish when both Koenig and his wife arrived home that night, with such testimony demonstrating "that [Koenig] had little to no opportunity to commit that alleged attempted sexual assault." He contends this testimony would also have diminished TNL's credibility, as TNL had testified her mother arrived home one or two hours after the incident.

¶33    We agree with the circuit court's conclusion that Koenig has failed to demonstrate both deficient performance and prejudice as it relates to the timing of the Mother's Day incident. As Koenig's reply brief admits, even wholly favorable testimony on the timing issue would have left a brief time period within which Koenig could have perpetrated the attempted assault. Moreover, as counsel observed during his *Machner* testimony, he could not reasonably contest that *something* had occurred in the middle of the night, as there was "a lot of ruckus going on" and everyone knew "that the Christmas tree fell." Finally, counsel considered calling Koenig's brother to testify about when Koenig might have arrived home that night, but his brother (who was a police officer) seemed reluctant to testify and counsel was worried that the prosecutor could ask him damaging cross-examination questions, including about Koenig's prior conviction.

### D. Failure to Call Witnesses About the Iowa Incident

¶34   Pretrial, the circuit court deemed testimony regarding the Iowa incident admissible as other acts for the purposes of proving intent, motive and absence of mistake.  At trial, TNL testified that she was staying in a single hotel room with Koenig and four other family members.  In the middle of the night, TNL awoke to find Koenig pulling the covers off her.  TNL testified she told Koenig to stop, to which he responded, "[N]o, just please let me do this.  I need to do this."  TNL gathered her blankets and went into the bathroom, where she fell asleep.

¶35   Koenig contends trial counsel should have called Koenig's wife and his other brother, both of whom were present in the room during the alleged incident.  He argues they would both have testified that they did not hear anything inappropriate happen between Koenig and TNL.  Koenig further argues his wife would have testified that she and TNL went into the bathroom together for a brief time during the night, after which TNL returned to sleep on an air mattress in the area immediately next to where Koenig was sleeping in the bed.

¶36   At the ***Machner*** hearing, Koenig's trial counsel testified that he investigated the Iowa incident and spoke to family members who were present.  He ultimately decided to try to ignore it as much as possible and hope the jury would not dwell on it.  He believed this was a successful strategy; the Iowa incident was mentioned on the first day of trial and then largely forgotten.[6]

---

[6] Koenig's trial counsel further testified that jurors could hardly recall the Iowa incident during his conversations with them after the trial, and counsel therefore concluded "we actually handled that perfectly."

Koenig's trial attorney thought that calling witnesses to contest TNL's account would have placed the Iowa incident "foremost in [the juror's] minds and probably would have hurt us." The circuit court regarded this all as reasonable trial strategy and concluded Koenig had failed to demonstrate deficient performance on the part of his trial attorney. We agree with that assessment.

### E. Failure to Object to Expert Testimony

¶37    Koenig next argues his trial counsel was constitutionally ineffective in his pretrial handling of the State's expert witness on delayed reporting, Susan Lockwood. He contends the State's notice form failed to comply with WIS. STAT. § 971.23(1)(e), and therefore his trial counsel should have either requested a more detailed summary of Lockwood's anticipated testimony or sought a ***Daubert*** hearing.[7]  Koenig also argues that, at trial, his counsel should have objected to testimony about false reporting of sexual assaults, a topic he contends was beyond the scope of the notice.

¶38    We agree with the circuit court's conclusion that Koenig failed to prove deficient performance. His attorney testified at the ***Machner*** hearing that he consulted with other defense attorneys when he learned the prosecutor wanted to use Lockwood as a witness. He was told Lockwood would come off as a "biased quack" who "doesn't know what she's doing," and her testimony would likely benefit the defense as long as there was a good cross-examination. Though counsel agreed the witness notice form was somewhat vague regarding the nature of Lockwood's testimony, counsel stated that as an experienced trial attorney who

---

[7] *See **Daubert v. Merrell Dow Pharm.***, 509 U.S. 579 (1993).

had handled many sexual assault cases, he could anticipate what she would likely say. He did not want to push the prosecution to fully prepare the witness by raising a pretrial challenge to the expert nature of her testimony or the adequacy of the notice form. These reasonable strategic determinations effectively foreclose an ineffective assistance claim based upon pretrial challenges to Lockwood's anticipated testimony.[8] *See State v. Balliette*, 2011 WI 79, ¶26, 336 Wis. 2d 358, 805 N.W.2d 334.

¶39 Koenig's attorney's handling of Lockwood's testimony during the trial was likewise constitutionally sufficient. Trial counsel interposed an objection to Lockwood's testimony hoping to put the prosecutor on the defense and try to "frustrate her so that maybe she wasn't thinking clearly." Counsel made a strategic decision not to object to Lockwood's testimony about false reporting because she gave "whiffle, waffly, terrible answers" and came off as biased. Koenig's attorney decided to let Lockwood "dig her grave" and respond during cross-examination. The transcript demonstrates that Koenig's counsel subjected Lockwood to damaging cross-examination, confirming his *Machner* account that the prosecutor was left "just trying to rehabilitate a witness that had gone sour for her." We perceive no deficient performance in trial counsel's handling of Lockwood's testimony.

---

[8] Moreover, the circuit court concluded that any *Daubert* challenge to Lockwood's testimony would lack merit. Counsel is not constitutionally deficient for failing to raise a meritless argument. *See State v. Sanders*, 2018 WI 51, ¶29, 381 Wis. 2d 522, 912 N.W.2d 16.

### F. Failure to Object to the State's Closing Arguments

¶40 During closing arguments, the prosecutor remarked that the defense theories about motives for fabrication were nothing but distractions because "[w]hen you have nothing, when you're lying, you point … the direction somewhere else." Koenig contends that his amounted to impermissible burden-shifting that "clearly signal[ed] to the jury that the defense had some obligation to present something."

¶41 We agree with the State's argument that Koenig's trial attorney was not constitutionally ineffective for failing to object to the prosecutor's offhand remark. Counsel provided a strategic reason for not objecting: though his prior closing argument objections had been denied, they were sufficient to throw the prosecutor off, her argument became disjointed, and he did not want the jury to believe he was trying to hide something. Moreover, the offhand remark about "hav[ing] nothing" did not impermissibly suggest Koenig had any burden of proof.

### G. Cumulative Prejudice

¶42 Having rejected all of Koenig's ineffective assistance of counsel claims, there is no basis to conclude the cumulative prejudice of the asserted errors is sufficient to undermine our confidence in the outcome of the trial. *See* ***State v. Thiel***, 2003 WI 111, ¶61, 264 Wis. 2d 571, 665 N.W.2d 305 ("[A] convicted defendant may not simply present a laundry list of mistakes by counsel and expect to be awarded a new trial.").

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

17