# COURT OF APPEALS
## DECISION
## DATED AND FILED

## August 20, 2020

Sheila T. Reiff
Clerk of Court of Appeals

## NOTICE

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP408**

Cir. Ct. No. **2016CV636**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

AVONELLE M. KISSACK LIVING TRUST,

   PLAINTIFF-APPELLANT,

V.

AMERICAN TRANSMISSION COMPANY, LLC, ATC MANAGEMENT INC., NORTHERN STATES POWER COMPANY DBA XCEL ENERGY, WPPI ENERGY, DAIRYLAND POWER COOPERATIVE AND SMMPA WISCONSIN, LLC,

   DEFENDANTS-RESPONDENTS.

---

APPEAL from a judgment of the circuit court for Sauk County: WENDY J.N. KLICKO, Judge. *Reversed and cause remanded for further proceedings.*

Before Fitzpatrick, P.J., Kloppenburg, and Graham, JJ.

¶1 FITZPATRICK, P.J. American Transmission Company, LLC condemned land for a utility easement on real estate owned by the Avonelle M. Kissack Living Trust.[1] ATC and Kissack did not agree on the amount ATC is required to pay to Kissack for the diminution of the fair market value of Kissack's real estate because of the condemnation for the easement. *See* WIS. STAT. § 32.09(6g) (providing that the compensation paid for the taking of the easement be "determined by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation, assuming the completion of the public improvement"). Kissack filed this action in the Sauk County Circuit Court, and that issue was tried to a jury. *See* WIS. STAT. § 32.06(10) (providing that the amount of just compensation may be tried in the circuit court). The jury returned a verdict determining the diminution in the fair market value of Kissack's real estate because of ATC's taking of the easement.

¶2 Kissack appeals the judgment based on that verdict. Kissack contends that the circuit court erred in denying its post-verdict motion for a new trial based on purportedly erroneous evidentiary rulings by the circuit court.

---

[1] We refer to American Transmission Company, LLC as "ATC." ATC is a public utility regulated by the Wisconsin Public Service Commission and the Federal Energy Regulatory Commission. *Waller v. American Transmission Co.*, 2013 WI 77, ¶14, 350 Wis. 2d 242, 833 N.W.2d 764. The creation of ATC was authorized by the legislature, and the legislature has designated ATC as a "public utility," an electric "transmission company," and a "transmission utility." *Id.* (citing WIS. STAT. §§ 196.01(5), 196.485(1)(ge), and 196.485(1)(i) (2017-18)). ATC has been vested with the power of eminent domain. *Id.* (citing WIS. STAT. § 32.02(5)(b)).

We refer to the Avonelle M. Kissack Living Trust as "Kissack," and we generally refer to the property at issue as "the Kissack property."

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Separately, Kissack contends that the circuit court erred by relying on an unpublished per curiam opinion issued by this court which was cited by ATC in argument in the circuit court. For the reasons discussed below, we largely affirm the challenged rulings of the circuit court. However, we conclude that, as to rulings of the court limiting Kissack's cross-examination of two witnesses, the circuit court materially erred. On that basis, we conclude that Kissack is entitled to a new trial. Accordingly, we reverse the judgment and remand this matter to the circuit court.

## BACKGROUND

¶3 The following material facts are not in dispute.

¶4 This case concerns the acquisition of a transmission line easement by ATC for the construction of a high voltage transmission line, known as the Badger Coulee Transmission Line Project, from northern Dane County to the La Crosse area.[2] The route taken by the transmission line runs through a 39.10 acre parcel of land owned by Kissack in Sauk County. Pursuant to the applicable statutes in WIS. STAT. ch. 32, ATC condemned an easement on the Kissack property for the erection, maintenance, and operation of the transmission line.[3]

¶5 ATC retained Edward Steigerwaldt, the owner and president of Steigerwaldt Land Services, Inc., to conduct a statutorily required appraisal of the

---

[2] We generally refer to the Badger Coulee Transmission Line Project as "the transmission line."

[3] Actually, a .87 acre easement and a separate .22 acre easement were condemned. However, the parties refer to the easements as one easement, and we follow that lead. Accordingly, we will refer to the easements as "the Kissack easement."

Kissack property, and the appraisal was sent to Kissack.[4]   *See* WIS. STAT. § 32.06(2)(a) and (b) ("The condemnor shall cause at least one … appraisal to be made of the property proposed to be acquired," and "[t]he condemnor shall provide the owner with … any appraisal made under par. (a)."). The appraisal reflected Steigerwaldt's then-opinion regarding the diminution in the fair market value of the Kissack property resulting from ATC's condemnation of the Kissack easement and the placement of the transmission line. *See generally* WIS. STAT. § 32.09(6g)[5] and ***Fields v. American Transmission Co.***, 2010 WI App 59, ¶¶9, 14, 324 Wis. 2d 417, 782 N.W.2d 729 (regarding determining the diminution of the fair market value). Steigerwaldt opined that the fair market value of the Kissack property before the taking of the easement was $782,000 or $20,000 per acre, and that the property's fair market value after the taking of the easement and the placement of the transmission line is $761,345 – a diminution in value of about $20,700.

¶6      Kissack did not dispute ATC's condemnation of the easement. *See* WIS. STAT. § 32.06(5) (providing for a circuit court action to contest the right of condemnation). But, pursuant to § 32.06(8) and WIS. STAT. § 32.08(5), Kissack

---

[4] To avoid confusion, we will refer to Steigerwaldt Land Services, Inc. as "Steigerwaldt Land Services," and to Edward Steigerwaldt as "Steigerwaldt."

[5] As noted, WIS. STAT. § 32.09(6g) states in pertinent part:

> In the case of the taking of an easement, the compensation to be paid by the condemnor shall be determined by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation, assuming the completion of the public improvement ….

challenged the adequacy of ATC's proposed compensation for the Kissack easement before the Sauk County Condemnation Commission.

¶7 Steigerwaldt prepared a second appraisal of the Kissack property just prior to the Commission proceedings. Steigerwaldt opined in the second appraisal that the Kissack property's fair market value before the easement was $832,650 (or $21,295 per acre) and that the property's fair market value after the taking of the easement and placement of the transmission line is $802,878 – a diminution in value of about $29,800.[6]

¶8 Before the Commission, Kissack and ATC stipulated that the Kissack property had a fair market value of $20,000 per acre before the taking. The parties presented evidence concerning the property's fair market value after the taking of the easement and placement of the transmission line, and the Commission issued a compensation award regarding the diminution of the fair market value of the Kissack property.[7] *See* WIS. STAT. §§ 32.06(8) and 32.08(6) (providing for proceedings before a commission of county condemnation commissioners to determine a compensation award); *see also **Waller v. American Transmission Co.**,* 2013 WI 77, ¶64-65, 350 Wis. 2d 242, 833 N.W.2d 764 (describing the statutory process for the determination of a compensation award by such a commission).

---

[6] We will refer collectively to Steigerwaldt's 2015 and 2016 appraisals as "the Steigerwaldt appraisals."

[7] The amount of the Commission's award is not in the record, but the parties do not contend that the amount is material to our analysis.

¶9 Kissack appealed the Commission's compensation award to the Sauk County Circuit Court. *See* WIS. STAT. § 32.06(10) (providing that "[w]ithin 60 days after the date of filing of the commission's award either condemnor or owner may appeal to the circuit court …."). [8]

¶10 Kissack presented an expert witness at the jury trial in the circuit court regarding the diminution in fair market value of the Kissack property as a result of the easement and the placement of the transmission line. Kissack's expert witness opined that the fair market value of the Kissack property was $782,000 (or $20,000 per acre) before the taking. Kissack's expert witness opined that the fair market value of the Kissack property diminished to $547,000 after the acquisition of the easement and placement of the transmission line for a $235,000 loss of fair market value for the Kissack property.

¶11 ATC presented expert witnesses who testified that the fair market value of the Kissack property was, respectively, $355,000 (or $9600 per acre) and $168,130 (or $4300 per acre) prior to the taking. The ATC expert witnesses testified that the fair market value of the Kissack property after the taking and the placement of the transmission line diminished by, respectively, $4000 and $2130. Steigerwaldt did not testify at trial.

¶12 The jury found that the Kissack property's fair market value was $352,000 (or about $9500 per acre) before the taking, and $343,500 after the

---

[8] Although this lawsuit was initiated by a Notice of Appeal of the Commission's decision to the circuit court, the proceeding in the circuit court is a de novo civil action. *See* WIS. STAT. § 32.06(10) (providing for a de novo trial in the circuit court upon appeal of a commission's award); *see also* **Gangler v. Wisconsin Elec. Power Co.**, 110 Wis. 2d 649, 657, 329 N.W.2d 186 (1983) (stating that proceedings in the circuit court are different from those before the condemnation commission, which are "administrative, not judicial, proceedings").

taking and the placement of the transmission line (or about $9300 per acre) for a diminished fair market value of $8500.

¶13 Post-verdict, Kissack moved for a new trial on the grounds that, because of material and prejudicial errors in the circuit court's evidentiary rulings, Kissack was prevented from presenting evidence at trial concerning: the Steigerwaldt appraisals; closing arguments by ATC's counsel at a separate trial concerning a different property in which counsel referred to Steigerwaldt's testimony at that separate trial regarding the Kissack property; and the parties' stipulation before the Commission.[9]

¶14 The circuit court denied Kissack's motion for a new trial and entered judgment on the jury's verdict.

¶15 Kissack appeals. We set forth other material facts in our discussion, below.

## DISCUSSION

¶16 On appeal, Kissack argues that the circuit court erred in its rulings which excluded evidence regarding: (1) the Steigerwaldt appraisals of the Kissack

---

[9] Kissack also filed a motion for remedial contempt against Steigerwaldt, who, although subpoenaed, failed to appear at trial to testify. Kissack raises issues on appeal regarding the circuit court's resolution of that motion. For two reasons, we do not reach the question of whether the circuit court erroneously exercised its discretion in denying Kissack's motion to have Steigerwaldt held in contempt of court for failing to appear at trial. First, as Kissack recognizes in its reply brief in this court, "it is not clear whether the issue of the Steigerwaldt contempt is before this court" in light of the facts that Steigerwaldt was never made a party in the circuit court action and Steigerwaldt has not been required to make an appearance in this appeal. Second, Kissack does not request that this court remand the contempt issue for a grant of sanctions, and it is unlikely that the contempt issue regarding Steigerwaldt will arise again at the time of the retrial.

property; (2) closing arguments made by ATC's counsel in the circuit court in *Wanat v. American Transmission Company*, No. 2017CV71 (Sauk Cty. Cir. Ct.); and (3) the stipulation between Kissack and ATC before the Commission.[10] Kissack also argues that the circuit court erred in purportedly "relying" on ATC's citations to an unpublished per curiam opinion issued by this court. We address each set of arguments in turn.[11]

## I. Motion for a New Trial Based on Evidentiary Rulings.

¶17 We begin by setting forth our standard of review and governing principles.

¶18 Kissack appeals the circuit court's denial of its motion for a new trial based on alleged errors in the court's evidentiary rulings. WISCONSIN STAT. § 805.15(1) states, in pertinent part, that "[a] party may move to set aside a verdict and for a new trial because of errors in the trial …." *Id.*

¶19 We review a circuit court's evidentiary rulings for an erroneous exercise of discretion. *State v. Meehan*, 2001 WI App 119, ¶23, 244 Wis. 2d 121,

---

[10] Kissack also sought to introduce an excerpt from the transcript of Steigerwaldt's trial testimony in *Wanat v. American Transmission Company*, No. 2017CV71 (Sauk Cty. Cir. Ct.), which concerned the fair market value of the Kissack property prior to the taking of the easement and the building of the transmission line. The circuit court excluded excerpts of Steigerwaldt's trial testimony in *Wanat*, and Kissack appeals that ruling. In light of our decision regarding admissibility of the Steigerwaldt appraisals (which encompasses the same subject matter as the Steigerwaldt testimony in *Wanat* at issue), we need not discuss this ruling of the circuit court because an attempt to introduce the Steigerwaldt trial testimony in *Wanat* is unlikely to recur at the retrial.

[11] ATC argues that we should disregard certain documents that are in the record because those documents were presented to the circuit court "weeks after the trial." We reject ATC's assertion because those documents were either duplicative of documents in the record at the time of trial or are not material to our analysis in this case.

630 N.W.2d 722. "A court's decision on a motion for a new trial is reviewed under that same standard." *Fields*, 324 Wis. 2d 417, ¶8 (citing *Larry v. Commercial Union Ins. Co.*, 88 Wis. 2d 728, 733, 277 N.W.2d 821 (1979)).

¶20 "The burden to demonstrate an erroneous exercise of discretion rests with the appellant." *Winters v. Winters*, 2005 WI App 94, ¶18, 281 Wis. 2d 798, 699 N.W.2d 229. "The [circuit] court abuses its discretion, however, when it grounds its decision upon an erroneous view of the law." *State v. City of La Crosse*, 120 Wis. 2d 263, 268, 354 N.W.2d 738 (Ct. App. 1984) (citing *Krolikowski v. Chicago & N.W. Trans. Co.*, 89 Wis. 2d 573, 581, 278 N.W.2d 865 (1979)).

¶21 "A new trial is warranted if there is a reasonable possibility the error contributed to the outcome." *Fields*, 324 Wis. 2d 417, ¶8 (citing *Martindale v. Ripp*, 2001 WI 113, ¶32, 246 Wis. 2d 67, 629 N.W.2d 698).

### A.  Exclusion of the Steigerwaldt Appraisals.

¶22 Kissack contends that the circuit court erred in excluding from evidence the Steigerwaldt appraisals. More particularly, Kissack argues that the Steigerwaldt appraisals were admissible in the context of the cross-examination of ATC's corporate representative, David Hollenberger; the cross-examination of one of ATC's expert witnesses, Jeffrey Olson; and the direct examination of Kissack's expert witness, Dominic Landretti. The issue of whether the Steigerwaldt appraisals are not hearsay under WIS. STAT. § 908.01(4)(b)1.-4., as argued by Kissack, affects our analysis of whether Kissack should have been permitted to question Hollenberger, Olson, and Landretti about the appraisals, so we first consider that issue.

¶23 Before proceeding, we state the following relevant facts for context. Pretrial, ATC filed a motion in limine in the circuit court to exclude from evidence at trial the Steigerwaldt appraisals as hearsay. As part of its response, Kissack argued that the Steigerwaldt appraisals are not hearsay because those appraisals are admissions by a party opponent under WIS. STAT. § 908.01(4)(b)1.-4.

¶24 The circuit court ruled that the Steigerwaldt appraisals are not hearsay as admissions by ATC under WIS. STAT. § 908.01(4)(b)1.-4.. The court explained that ATC had used Steigerwaldt's valuation of the Kissack property for purposes of "the proceedings at the condemnation committee," but had not adopted the valuation "for all time." The court also stated that "the relationship [between Steigerwaldt and ATC] … is not such that the Court … [could] find that [the appraisal] would be considered the admission of [ATC]."

¶25 Other relevant facts will be mentioned in our analysis, below.

*1. Admissibility of the Steigerwaldt Appraisals Under WIS. STAT. § 908.01(4)(b).*

¶26 WISCONSIN STAT. § 908.01(4) sets forth those statements, defined as "an oral or written assertion," which are excluded from the hearsay rule. *See* § 908.01(1). Pertinent here is § 908.01(4)(b), which addresses an "[a]dmission by party opponent," and provides that a statement is not hearsay if "[t]he statement is offered against a party and is" one of the following four categories of statements:

> 1. The party's own statement, in either the party's individual or a representative capacity, or
>
> 2. A statement of which the party has manifested the party's adoption or belief in its truth, or
>
> 3. A statement by a person authorized by the party to make a statement concerning the subject, or

4. A statement by the party's agent or servant concerning a matter within the scope of the agent's or servant's agency or employment, made during the existence of the relationship ….[12]

#### a. *Village of Greendale*.

¶27 Prior to considering each of the four alternatives in WIS. STAT. § 908.01(4)(b), we discuss Kissack's argument that an opinion of this court is "controlling" on the question of whether the Steigerwaldt appraisals are not hearsay under § 908.01(4)(b).

¶28 In *State ex rel. N/S Associates v. Board of Review of Village of Greendale*, 164 Wis. 2d 31, 473 N.W.2d 554 (Ct. App. 1991), we discussed the appeal of a real estate property tax assessment under WIS. STAT. § 740.47. *Greendale*, 164 Wis. 2d at 40. The property owner, JMB Group Trust IV (JMB), represented its belief of the value of its real estate holdings to its investors in quarterly reports. *Id.* at 57. Appraisals of that same real estate commissioned by JMB closely aligned with the fair market value amounts JMB represented to its investors. Based on the representations of JMB to its investors, and the timing of those representations, we concluded that the appraisals were not hearsay. *Id.* at 58 n.11. JMB had, through its representations to its investors, caused the appraisals

---

[12] WISCONSIN STAT. § 908.01(4)(b) contains five categories, but the parties ignore the fifth category as inapplicable.

to be an admission by a party opponent under WIS. STAT. § 908.01(4)(b) and, therefore, the appraisals were not hearsay. *Id.*[13]

¶29    Kissack argues that *Greendale* is "controlling," but fails to tie the unique facts in *Greendale* to the present case in any meaningful way. *Greendale* does not, as Kissack contends, stand for the broad proposition that every appraisal of real estate previously commissioned by a party is not hearsay and is admissible in evidence against that party in subsequent litigation regarding the appraised real estate.

### b. Representative Capacity.

¶30    We now consider the first category of statements described in WIS. STAT. § 908.01(4)(b) and whether Steigerwaldt's appraisals are ATC's statements made through Steigerwaldt in his "representative capacity." *See* § 908.01(4)(b)1. Kissack notes ATC's business requires it to acquire easements to install and maintain transmission lines. According to Kissack, ATC contracted with Steigerwaldt Land Services to do "ATC's job," including appraisals and "statistical and market research work." Kissack asserts that because Steigerwaldt Land Services "did a very large portion of the work for ATC … there is really no difference between the two companies for the purpose of statements that were said or sent to landowners."

---

[13] We also concluded in *State ex rel. N/S Associates v. Board of Review of Village of Greendale*, 164 Wis. 2d 31, 473 N.W.2d 554 (Ct. App. 1991) that the appraisals were admissible in evidence before the Board of Review because WIS. STAT. § 70.47(8)(d) specifically permitted the Board to rely on "appraisals, documents and other data which may throw light upon the value of the property." *Id.* at 58 n.11.

¶31    Kissack's argument fails because Kissack gives us little more than conclusions.  *See Associates Fin. Servs. Co. of Wis., Inc. v. Brown*, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (stating this court does not consider conclusory assertions).  Kissack does not point to any evidence in the record that Steigerwaldt was or is an employee of ATC or a "representative" of ATC as that term is used in WIS. STAT. § 908.01(4)(b)1.  At most, the evidence relied on by Kissack establishes that Steigerwaldt Land Services undertook a large amount of appraisal work for ATC, and that Steigerwaldt prepared appraisals of the Kissack property for ATC.  Accordingly, we conclude that Kissack has failed to show that the Steigerwaldt appraisals were statements of ATC made by Steigerwaldt in a representative capacity.

### c.  Manifested Belief in Statement's Truth.

¶32    Next, we turn to the second category of statements.  *See* WIS. STAT. § 908.01(4)(b)2.  To establish that a party "manifested … [an] adoption or belief in [the] truth" of an out-of-court statement, more than mere acquiescence must be shown.  *See id.* and *State v. Rogers*, 196 Wis. 2d 817, 832-34, 539 N.W.2d 897 (Ct. App. 1995).  Rather, ATC must have purposefully embraced the truth of the statements, the Steigerwaldt appraisals.  *See Rogers*, 196 Wis. 2d at 834.  The facts relied on to establish adoptive intent must be unambiguous, evincing a knowing approval of the statement of another.  *Id.* at 831-32.  In addition, the proponent of the proposed admission bears the burden of proving that the standards of § 908.01(4)(b)2. have been satisfied.  *See White Indus., Inc. v. Cessna Aircraft Co.*, 611 F. Supp. 1049, 1062 (W.D. Mo. 1985) (ruling that under FED. R. OF EVID. 801(d)(2)(B), which essentially duplicates § 908.01(4)(b)2., the proponent bears the burden of proof); *State v. King*, 205 Wis. 2d 81, 92, 555 N.W.2d 189 (Ct. App. 1996) (stating "[f]ederal case law interpreting a federal rule

is persuasive authority in construing an analogous state rule"); *see also **Marlow v. IDS Prop. Cas. Ins. Co.***, 2012 WI App 51, ¶9, 340 Wis. 2d 594, 811 N.W.2d 894 (stating that case law interpreting a federal law that is nearly identical to Wisconsin law is persuasive authority).

¶33 Kissack argues that ATC manifested a belief in the truth of the Steigerwaldt appraisals for the following reasons: (1) ATC caused Steigerwaldt's 2015 appraisal of the Kissack property to be sent to Kissack; (2) ATC presented Steigerwaldt's 2016 appraisal of the Kissack property to the Commission; (3) ATC stipulated before the Commission to the per acre fair market value before the easement acquisition stated in the 2015 Steigerwaldt appraisals; and (4) counsel for ATC stated during closing arguments in **Wanat** that Steigerwaldt appraised the Kissack property at $20,000 per acre.[14]

¶34 We agree with ATC that none of the reasons given by Kissack unambiguously manifests a knowing approval of the Steigerwaldt appraisals by ATC as required by WIS. STAT. § 908.04(1)(b)2. First, ATC had a statutory obligation to send a copy of the 2015 Steigerwaldt appraisal to Kissack. *See* WIS. STAT. § 32.06(2)(b). As a result, sending a copy of the first appraisal to Kissack cannot reasonably be construed as an unambiguous adoption of the appraisal by ATC without a reason *why* the appraisal was sent other than the requirement of § 32.06(2)(b). Kissack does not cite to facts providing such context but, instead, relies only on a copy of the 2015 appraisal and pages from the transcript of the hearing before the Commission. Those portions of the record do not indicate any

---

[14] Kissack also asserts that "Steigerwaldt is ATC's master contract holder." However, Kissack concedes that the purported "master contract" was not produced in discovery, and is not part of the record. In addition, the citations to the record provided by Kissack do not support Kissack's assertion regarding a "master contract." Accordingly, we ignore this assertion.

reason why the appraisal was sent to Kissack other than ATC's statutory obligation to do so. Next, presenting the 2016 Steigerwaldt appraisal to the Commission, and stipulating to the 2015 Steigerwaldt appraisal fair market value of the Kissack property prior to acquisition of the easement before the Commission, do not manifest an unambiguous intent by ATC to adopt the Steigerwaldt appraisals. We agree with the circuit court's ruling, discussed again later in this opinion, that ATC's agreements before the Commission regarding the Steigerwaldt appraisals were not an unambiguous adoption of Steigerwaldt's opinions by ATC but, instead, were done to "expedite" the Commission's non-judicial proceedings, the result of which could be appealed de novo to the circuit court. *See supra* n.8. Finally, we reject Kissack's argument concerning ATC counsel's reference to Steigerwaldt's opinion in closing argument in the ***Wanat*** trial. As we will discuss in more detail later in this opinion, "closing arguments of counsel are opinions only and cannot be construed as an admission" against counsel's client. *See infra* ¶76 and ***Kuzmic v. Kreutzmann***, 100 Wis. 2d 48, 52, 301 N.W.2d 266 (Ct. App. 1980) (cited with approval in ***Fletcher v. Eagle River Mem'l Hosp., Inc.***, 156 Wis. 2d 165, 178, 456 N.W.2d 788 (1990)).

### d. Authorized to Make the Statement.

¶35 The third category requires that Steigerwaldt must have been a person "authorized" by ATC to make the statement. *See* WIS. STAT. § 908.01(4)(b)3. Kissack argues that, because facts show that Steigerwaldt was hired by ATC to appraise the Kissack property to determine just compensation, Steigerwaldt was necessarily a person authorized by ATC to make a statement concerning the value of the Kissack property.

¶36  ATC responds, and we agree, that ATC was statutorily obligated to hire an appraiser to appraise the Kissack property, *see* WIS. STAT. § 32.06(2)(a), and that Kissack fails to point to any facts to prove that the relationship between Steigerwaldt and ATC was such that Steigerwaldt was specifically authorized to make statements on behalf of ATC as to the fair market value of the Kissack property.  Furthermore, as noted by ATC, the Steigerwaldt appraisals each contain a signed statement certifying that the appraisal is Steigerwaldt's own opinion, and ATC is identified as the client.

¶37  Accordingly, we conclude that Kissack has failed to point to any facts in this context that satisfy the requirements of WIS. STAT. § 908.01(4)(b)3.

*e. Statements Made by an Agent.*

¶38  The final category of statements are those statements that are made by an "agent" of the party "during" and "within" the scope of that agency.  WIS. STAT. § 908.01(4)(b)4.  "An agent has a fiduciary relationship with his [or her] principal."  *Westmas v. Creekside Tree Serv., Inc.*, 2018 WI 12, ¶30, 379 Wis. 2d 471, 907 N.W.2d 68.

¶39  Kissack asserts that "there was abundant evidence" that Steigerwaldt was ATC's agent, and the appraisals were prepared within the scope of Steigerwaldt's agency with ATC.  Kissack then states only two bases for that assertion.  Initially, Kissack points to a letter to Kissack from an employee of Steigerwaldt Land Services which requests a time that Steigerwaldt can go to the Kissack property to complete an appraisal of the property.  Nothing about that letter indicates a fiduciary relationship between Steigerwaldt and ATC.  Kissack also points to the appraisals prepared by Steigerwaldt.  Again, nothing in those appraisals indicates that Steigerwaldt was acting as ATC's fiduciary.

¶40    In sum, we conclude that Kissack has failed to establish that the Steigerwaldt appraisals are not hearsay because those appraisals fall within the categories of statements set forth in WIS. STAT. § 904.01(4)(b)1.-4.

¶41    That the Steigerwaldt appraisals are hearsay is not dispositive regarding the admissibility of those appraisals.  Accordingly, we now discuss the parties' other arguments regarding the admissibility of the Steigerwaldt appraisals for the cross-examination of Hollenberger and Olson, and the direct examination of Landretti.

### 2.  Admissibility of the Steigerwaldt Appraisals for Purposes of Cross-Examination and Direct Examination.

¶42    Kissack argues that the circuit court erred in ruling that the Steigerwaldt appraisals were not admissible for the purpose of questioning Hollenberger and Olson on cross-examination, and Landretti on direct examination.  Kissack asserts that, even if the Steigerwaldt appraisals are hearsay, those appraisals were admissible for purposes of Kissack's examination of those witnesses.

¶43    We address first the admissibility of the appraisals during cross-examination of Hollenberger and Olson and then consider the admissibility of the Steigerwaldt appraisals during Kissack's direct examination of Landretti.

### a.  Cross-Examination of Hollenberger and Olson.

¶44    We begin by repeating, for context, salient facts.

¶45    Steigerwaldt is a certified general appraiser.  He completed an appraisal of the Kissack property in 2015.  In the 2015 appraisal, Steigerwaldt opined that the Kissack property, before the taking of the easement, had a fair

market value of $782,000, or 20,000 per acre, and that the property's fair market value after the taking of the easement and the placement of the transmission line was $761,345 – a diminution of about $20,700. In 2016, Steigerwaldt prepared a second appraisal of the Kissack property. Steigerwaldt opined in the 2016 appraisal that the Kissack property's fair market value before the taking of the easement was $832,650 (or $21,295 per acre), and that the property's fair market value after the taking of the easement and placement of the transmission line was $802,878, a diminution of about $29,800.

¶46    One of ATC's expert witnesses, Kevin Zarem, opined at trial that the fair market value of the Kissack property was $355,000 (or $9600 per acre) prior to the taking. Zarem also testified that the fair market value of the Kissack property after the taking of the easement and the placement of the transmission line was $351,000, resulting in a diminution in fair market value after the taking and the placement of the transmission line of $4000. Another of ATC's expert witnesses, Jeffrey Olson, testified at trial that the Kissack property had a fair market value before the taking of $168,130 (or $4300 per acre) and a fair market value after the taking of about $166,000, resulting in a $2130 loss of fair market value.

¶47    Kissack's expert witness, Dominic Landretti, testified at trial that the Kissack property had a fair market value before the taking of $782,000 (or $20,000 per acre) and that the fair market value of the Kissack property diminished to $547,000 after the acquisition of the easement and placement of the transmission line, resulting in a $235,000 loss of fair market value.

¶48    The circuit court ruled that the content of the Steigerwaldt appraisals was not a proper subject for cross-examination of Hollenberger and Olson.

Kissack argues that the circuit court erred because it should have been permitted to cross-examine Olson and Hollenberger on the contents of the Steigerwaldt appraisals for the purpose of "impeach[ing] and discredit[ing]" those witnesses. We agree and now discuss the cross-examination of Hollenberger.

### i. Hollenberger.

¶49 Hollenberger, the manager of ATC's real estate department and ATC's corporate representative at trial, testified and told the jury on direct examination that the manner in which ATC is compensated by the federal government for costs to acquire assets gives ATC no incentive to "drive down" the amounts ATC pays landowners for transmission line easements.

> Q Would ATC have any reason to drive down the amount of compensation that it pays to landowners for easements?
>
> A Absolutely not.
>
> Q Can you explain a little more about that, please.
>
> A Certainly. The way ATC makes money is when we spend dollars on capital projects. Every dollar we spend on a capital project goes into our revenue base. Through the Federal Energy Regulatory Commission, we are guaranteed a rate of return based on our capital dollars spent. So there would be no reason for us because the more dollars we spend, the more money we make.

Kissack argued in the circuit court, and argues on appeal, that cross-examination of Hollenberger on the contents of the Steigerwaldt appraisals would have rebutted Hollenberger's testimony about ATC's purported fairness and that ATC has no incentive to "drive down" the amount ATC pays to landowners for easements.

¶50 The circuit court ruled that questioning Hollenberger on the content of the Steigerwaldt appraisals was not an "appropriate … line of questioning"

given that Hollenberger testified that he had reviewed and read, but not relied on, those appraisals.

¶51 We conclude that, in light of Hollenberger's statements in his direct examination testimony, the Steigerwaldt appraisals were admissible for purposes of the Hollenberger cross-examination. WISCONSIN STAT. § 906.11(2)[15] provides that "[a] witness may be cross-examined on *any matter relevant* to any issue in the case." (Emphasis added.) Wisconsin's "wide-open" rule of cross-examination allows for cross-examination on matters that are relevant. *See **Boller v. Cofranses***, 42 Wis. 2d 170, 184, 166 N.W.2d 129 (1969), *overruled on other grounds by **State v. Williquette***, 190 Wis. 2d 677, 526 N.W.2d 144 (1999). As noted by Professor Blinka, "The wide-open scope of cross-examination is tempered only by the judge's authority to limit it with respect to matters not testified to on direct, where such action is in the interest of justice," and "a cross-examiner who is truly adverse to the witness should be allowed to probe any relevant subject." 7 Daniel D. Blinka, *Wisconsin Practice Series: Wisconsin Evidence* § 611.20, at 597-98 (4th ed. 2017).

¶52 Consistent with those precepts, "[a] witness's credibility is always relevant and a proper matter for cross-examination." Blinka, *supra*, § 611.2, at 597. Put another way, "[t]he bias or prejudice of a witness is not a collateral issue," and bias or prejudice can be proved with extrinsic evidence. ***State v. Williamson***, 84 Wis. 2d 370, 383, 267 N.W.2d 337 (1978), *abrogated on other*

---

[15] WISCONSIN STAT. § 906.11(2) provides in full: "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. In the interests of justice, the judge may limit cross-examination with respect to matters not testified to on direct examination."

*grounds by **Manson v. State***, 101 Wis. 2d 413, 304 N.W.2d 729 (1981); *see **State v. Scott***, 2000 WI App 51, ¶21, 234 Wis. 2d 129, 608 N.W.2d 753.

¶53    To confirm that point from opinions of this court and our supreme court, the Wisconsin Supreme Court adopted WIS. STAT. § 906.16 regarding bias of a witness.[16]  The rule states:  "For the purpose of attacking the credibility of a witness, evidence of bias, prejudice, or interest of the witness for or against any party to the case is admissible."  *Id.*  The Judicial Council Note accompanying § 906.16 states in pertinent part:

> The rule codifies the common law in Wisconsin.  *See **State v. Long***, 2002 WI App 114, ¶18, 255 Wis. 2d 729, 647 N.W.2d 884 ("Wisconsin law is in accordance with the principle set forth in [***State v.***] **Abel**[, 469 U.S. 45 (1984)].").  The committee viewed codification of the rule as useful, however, to reiterate that bias, prejudice, or interest of a witness is a fact of consequence under WIS. STAT. § 904.01.  Further, the rule should make it clear that bias, prejudice, or interest is not a collateral matter, and can be established by extrinsic evidence.

¶54    A circuit court properly exercises its discretion if the court applies the proper law to established facts.  ***Meehan***, 244 Wis. 2d 121, ¶23.  Here, the circuit court did not apply the proper law when it excluded the contents of the Steigerwaldt appraisals from the cross-examination of Hollenberger.  There was evidence of bias on the part of Hollenberger as ATC's corporate representative.  He stated at trial that ATC had no incentive to "drive down" amounts of compensation for the easements paid to landowners such as Kissack.  Yet, Hollenberger had read and reviewed the Steigerwaldt appraisals, which were done

---

[16] WISCONSIN STAT. § 906.16 became effective on January 1, 2018, about eleven months before the jury trial in this action.

at ATC's request by an appraiser who had done many similar appraisals for ATC, and his knowledge of the Steigerwaldt appraisals was, at the very least, inconsistent with his statement before the jury that there was no reason for ATC not to pay a higher amount for the easements to Kissack.

¶55    The statement by Hollenberger, ATC's corporate representative, about ATC's corporate policy and how that policy generously affects landowners such as Kissack, is subject to reasonable cross-examination which explores Hollenberger's awareness of the Steigerwaldt appraisals that arguably contradict his statement.    In the context of Hollenberger's cross-examination, the Steigerwaldt appraisals were relevant to the major issue in the case (compensation to Kissack for acquisition of the easement and placement of the transmission line) and directly related to the credibility and bias of ATC's corporate representative, Hollenberger.  The jury should have been given an opportunity to consider this evidence to determine for itself the credibility of Hollenberger's testimony in light of his awareness of the Steigerwaldt appraisals and his statements on direct examination.    For these reasons, we conclude that the circuit court erred in excluding the contents of the Steigerwaldt appraisals from the cross-examination of Hollenberger.

¶56    ATC argues that the circuit court "could" have excluded the Steigerwaldt appraisals from evidence during the cross-examination of Hollenberger (and Olson) based on a "lack of foundation" and WIS. STAT. § 904.03.  These arguments fail because ATC concedes that the circuit court never exercised its discretion in those ways, and "we do not exercise discretion for the circuit court." *Cook v. Public Storage, Inc.*, 2008 WI App 155, ¶100, 314 Wis. 2d 426, 761 N.W.2d 645.

¶57     Also, to the extent that ATC's "lack of foundation" argument alleges that the Steigerwaldt appraisals were not what Kissack claims those to be, WIS. STAT. § 909.01 states: "The requirements of authentication or identification as a condition precedent to admissibility are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." As noted by Kissack, identification and authentication of the Steigerwaldt appraisals could have been made by: Landretti, who saw Steigerwaldt testify to the appraisals at the Commission hearing; Olson, ATC's expert who read and reviewed the Steigerwaldt appraisals, had those in his work file for this case, and testified about those appraisals at his deposition; or Hollenberger, who read and reviewed the Steigerwaldt appraisals as part of his duties for ATC. In addition, ATC contends that a "foundation" for admissibility of the appraisals was required under WIS. STAT. § 907.02(1), and that such foundation could be provided only by Steigerwaldt. ATC gives only a conclusion, rather than analysis of § 907.02(1), in support of that position. Put another way, ATC gives no authority for its contention that, in order to cross-examine Hollenberger and Olson about the Steigerwaldt appraisals (which each had already read and were in their possession), § 907.02(1) requires that Steigerwaldt first testify at trial.

¶58     ATC also alleges that the circuit court "could" have excluded the Steigerwaldt appraisals under WIS. STAT. § 904.03. ATC claims that it would have been "confusing" and "cumulative" to introduce the Steigerwaldt appraisals during those cross-examinations. However, the circuit court never came to the conclusion that this evidence was confusing or cumulative in the context of these cross-examinations. And, as noted, we do not exercise the circuit court's discretion for it. *See Cook*, 314 Wis. 2d 426, ¶100. Moreover, for the reasons we discussed concerning the cross-examination of Hollenberger and that we will

discuss concerning the cross-examination of Olson, we conclude that the contents of the Steigerwaldt appraisals are not confusing or cumulative in the context of those cross-examinations.

## ii. Olson.

¶59    Kissack also argues that the contents of the Steigerwaldt appraisals were admissible for the purpose of cross-examining Olson.  Kissack argued in the circuit court that, because Olson read, reviewed and considered the Steigerwaldt appraisals, those appraisals were admissible under WIS. STAT. § 907.03.   The circuit court ruled that "cross-examination as to what was in [Olson's work] file in and of itself is allowable," but the court did not believe that Kissack was allowed under WIS. STAT. § 906.11(2) to "ask what the results of [the Steigerwaldt appraisals] were in detail."   The court excluded the Steigerwaldt appraisals from evidence for the cross-examination of Olson because, although Olson "consider[ed]" the Steigerwaldt appraisals and "acknowledg[ed]" that the opinions in those appraisals were "different from" Olson's opinion, Olson had not "represented" that he had "relied on" the Steigerwaldt appraisals.

¶60    We start by noting that ATC does not contend in briefing in this court that hearsay cannot be used to cross-examine an expert such as Olson. Rather, ATC relies on the hypothetical rulings ATC contends that the circuit court "could" have made to exclude the Steigerwaldt appraisals from cross-examination, an alleged lack of foundation and under WIS. STAT. § 904.03.  As already noted, those arguments fail for ATC.  Regardless, we now discuss the admissibility of the Steigerwaldt appraisals for the purpose of the cross-examination of Olson.

¶61 Initially, we observe that ATC does not dispute the relevance of the Steigerwaldt appraisals.[17] The Steigerwaldt appraisals are relevant to the issue in this case: the diminution of the fair market value of the Kissack property resulting from the easement acquisition and the placement of the transmission line. Olson's opinion was that the pre-taking fair market value of the Kissack property was only $168,130 (or $4300 per acre). Therefore, there was, according to Olson, only a small difference between the pre-taking fair market value and the post-taking fair market value of approximately $166,000. However, both Steigerwaldt and Landretti opined that the fair market value of the Kissack property pre-taking was at least $782,000 (or $20,000 per acre). For that reason, the pre-taking fair market value was an important part of the jury's determination, and there was a wide spread among the experts' opinions on that point. The Steigerwaldt appraisals reinforce Landretti's opinion on the pre-taking fair market value of the property and, as a result, cross-examination of Olson about the appraisals would increase the opportunity for Kissack to convince the jury that Olson's opinion was less credible than Landretti's opinion.

¶62 Regarding the admissibility of hearsay during the cross-examination of an expert witness, our supreme court has held: "*If a party's expert relies on certain data, 'fair play' requires that the opponent may show that* the data relied on did not support the conclusions of the testifying expert, or that *the data relied on contained information ignored by the testifying expert*." **Karl v. Employers Ins. of Wausau**, 78 Wis. 2d 284, 300, 254 N.W.2d 255 (1977) (emphasis added);

---

[17] WISCONSIN STAT. § 904.01 states: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

*see also* **State v. Weber**, 174 Wis. 2d 98, 108 n.6, 496 N.W.2d 762 (Ct. App. 1993). Citing **Karl**, Professor Blinka states:

> The relevance of this line of cross-examination is usually established once the witness concedes having 'reviewed' the particular report or statement prior to testifying. The witness may not agree with the contents, but he [or she] may be cross-examined about them and even compelled to concede that the hearsay undercuts his [or her] opinion.

Blinka, *supra*, § 702.6042, at 726.

¶63 The record establishes that the Steigerwaldt appraisals were, at a minimum, "reviewed" by Olson as part of the process to come to his opinion in this case. At trial, Olson was allowed to state on cross-examination that both Steigerwaldt appraisals were in his file, and that he had "reviewed," "examined," and "read" the appraisals. Olson also testified on cross-examination that his "ultimate opinion in this case" "disagreed" with the opinions in the Steigerwaldt appraisals. In addition, at Olson's deposition in this case, he testified that he read both Steigerwaldt appraisals prior to writing his report in this case. More particularly, Olson testified at his deposition that he reviewed the Steigerwaldt appraisals as "part of writing [his] appraisal in this case." But, when asked why Steigerwaldt's appraisal was "so far different" from his appraisal, Olson stated, "I have no opinion."

¶64 The record establishes that there was information that Olson "relied on" to come to his conclusions in this case. But, his file also contained the appraisals from Steigerwaldt that Olson "ignored" because he refused to analyze the information in Steigerwaldt's appraisals that was contrary to his opinions. As a result, in the phrasing of **Karl**, "fair play" required that Kissack be allowed to

reasonably cross-examine about the Steigerwaldt appraisals, and the circuit court erred in not applying the proper law in making its ruling.[18]

¶65 In sum, we conclude that the circuit court erred in excluding from evidence the contents of the Steigerwaldt appraisals for purposes of cross-examining Hollenberger and Olson.

### iii. Material Prejudice.

¶66 Kissack argues that the circuit court's error in excluding the Steigerwaldt appraisals from the cross-examinations of Hollenberger and Olson was materially prejudicial and affected its substantial rights. ATC makes no argument in response, and that failure to respond is sufficient to grant Kissack's request for a new trial in light of the errors of the circuit court. *See Fischer v. Wisconsin Patients Comp. Fund*, 2002 WI App 192, ¶1 n.1, 256 Wis. 2d 848, 650 N.W.2d 75 (argument asserted by the appellant and not disputed by the respondent may be taken as admitted). Nonetheless, we discuss this issue briefly.

¶67 Under WIS. STAT. § 805.18(2), this court orders a new trial based on an improper ruling on an evidentiary issue if "an examination of the entire proceeding leads us to conclude that the error affected the substantial rights of the party seeking relief on appeal."[19] *Weber*, 174 Wis. 2d at 109. For the reasons

---

[18] We need not reach the question of whether the record shows that Olson in actuality "relied on" the Steigerwaldt appraisals in coming to his conclusions in this case, regardless of whether Olson explicitly used the phrase "relied on" in testimony regarding to those appraisals.

[19] WISCONSIN STAT. § 805.18(2) states:

> No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of selection or misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in

(continued)

already discussed, we conclude that the errors by the circuit court did substantially affect the rights of Kissack, and that the errors contributed to the outcome. *See Fields*, 324 Wis. 2d 417, ¶8. The Steigerwaldt appraisals, and the effect of those appraisals on the jury's view of the credibility of Hollenberger and Olson, and the weight that should be given to their testimony, went to the heart of the issue the jury was required to decide: the value of the Kissack property before and after the easement. Under those circumstances, the inability of Kissack to cross-examine Hollenberger and Olson about the Steigerwaldt appraisals affected Kissack's substantial rights and caused material prejudice such that a new trial is required.[20]

### b. Direct Examination of Landretti.

¶68 The circuit court determined that the Steigerwaldt appraisals were not admissible in evidence during the direct examination of Landretti, one of Kissack's expert witnesses. The circuit court ruled that direct examination testimony of Landretti regarding the Steigerwaldt appraisals "would just merely be to buttress [Landretti's] opinion," which the court did not believe was a proper purpose under WIS. STAT. § 907.03.

---

> the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

WISCONSIN STAT. § 901.03(1) states: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected …."

[20] Our conclusions to this point are sufficient to remand the matter for a new trial. However, we now discuss other issues raised in this appeal that may recur at the retrial. We emphasize that our discussion of these issues does not constrain the circuit court's proper exercise of its discretion based on the state of the record and the arguments of the parties at the time of the retrial.

¶69    Kissack asserts that it should have been permitted to question Landretti about the Steigerwaldt appraisals on direct examination because the appraisals were part of Landretti's work-file. Kissack argues that, under WIS. STAT. § 907.03, testifying experts are able to rely on the analyses of other experts. Kissack contends that, because Landretti was allowed to rely on the Steigerwaldt appraisals to form his opinions, it should have been permitted to question Landretti about his reliance on the Steigerwaldt appraisals and have those appraisals admitted into evidence.  We disagree.

¶70    WISCONSIN STAT. § 907.03 permits expert witnesses to rely on admissible and inadmissible evidence if that evidence is of a type reasonably relied upon by experts in the relevant field in forming an opinion.  *See State v. Watson*, 227 Wis. 2d 167, 191, 195, 595 N.W.2d 403 (1999); *see also Weber*, 174 Wis. 2d at 108 (stating that the circuit court "correctly recognized that [§] 907.03 … allowed [the expert] to offer an opinion based in part upon hearsay data that was otherwise inadmissible").[21]  However, "§ 907.03 is not a hearsay exception" and it "does not permit" the disclosure of hearsay evidence during direct examination. *Watson*, 227 Wis. 2d at 198-99; *see also* Blinka, *supra*, § 702.6042, at 707 (stating

---

[21]  WISCONSIN STAT. § 907.03 provides:

> **Bases of opinion testimony by experts.**  The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.  Facts or data that are otherwise inadmissible may not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion or inference substantially outweighs their prejudicial effect.

"[n]either WIS. STAT[]. § 907.05 nor … § 907.03 licenses the proponent to disclose inadmissible bases during *direct examination*"). "Hearsay [evidence] upon which the expert's opinion is predicated may not be automatically admitted into evidence by the proponent and used for the truth of the matter asserted unless the [evidence] [is] otherwise admissible under a recognized exception to the hearsay rule." *Weber*, 174 Wis. 2d at 107.

¶71 Based on those authorities, Kissack gives us no reason to conclude that the circuit court's decision to exclude from evidence the Steigerwaldt appraisals through Kissack's direct examination of Landretti was an erroneous exercise of the court's discretion. Accordingly, we conclude that the circuit court did not err by ruling that the contents of the Steigerwaldt appraisals could not be admitted into evidence through Kissack's direct examination of Landretti.

## B. The Circuit Court Properly Excluded Closing Arguments From the *Wanat* Trial.

¶72 Kissack argues that the circuit court erred in excluding from evidence an excerpt from a transcript of ATC's closing argument at the *Wanat* trial.[22]

---

[22] As mentioned, we need not take up the circuit court's order that excluded from evidence Steigerwaldt's testimony at the *Wanat* trial. We discuss the exclusion from evidence of ATC counsel's statements in closing argument in the *Wanat* trial because it concerns a separate issue, a statement of counsel, rather than expert opinions of the appraiser, Steigerwaldt.

### 1. *Pertinent Facts.*

¶73    At trial, Kissack sought to admit into evidence an excerpt from a transcript of the closing argument made by ATC's counsel during the ***Wanat*** trial. That excerpt follows:

> [The Kissack property] is worth $20,000 an acre next to the village, surrounded by all that stuff. It makes sense. That doesn't make sense for the Wanat property.
>
> ….
>
> And it is hard for me to see Mr. Steigerwaldt's name dragged through the mud because I think he is a real straight shooter and calls it like it is, and that's why he values one property at [$]20,000 an acre and another property up here at what he did. He just calls it as he sees it. You folks need to decide if you find that testimony credible or not.

¶74    Kissack argued in the circuit court that the excerpted portion of ATC's closing argument in ***Wanat*** is admissible in the present case because it is an admission by a party opponent and, therefore, not hearsay. *See* WIS. STAT. § 908.01(4)(b)4.[23]   In the circuit court, ATC objected to the admission of its counsel's statement in the ***Wanat*** closing argument. More specifically, ATC argued:

> My statements during closing arguments were statements of opinion and argument, they were not statements of fact and they weren't intended to be.[24]

---

[23] "A statement by [a] party's agent … concerning a matter within the scope of the agent's … agency or employment, made during the existence of the relationship" is not hearsay. WIS. STAT. § 908.01(4)(b)4.

[24] Counsel for the landowners and ATC, and the circuit judge, were the same at both the ***Wanat*** and Kissack trials.

31

¶75 The circuit court concluded that ATC counsel's statement in the *Wanat* closing argument was not admissible.[25]

¶76 We conclude that a prior holding of this court governs. *See Kuzmic*, 100 Wis. 2d 48. In *Kuzmic*, a car accident case, plaintiff's counsel made a statement in closing argument which the circuit court construed as a concession that plaintiff was negligent in the operation of his vehicle. *Id.* at 49. After the jury was allowed to begin its deliberations, the circuit court brought the jurors back into the courtroom and instructed them that the court was answering the question on the special verdict concerning plaintiff's negligence "yes" based on the

---

[25] To determine whether ATC counsel's closing arguments at the *Wanat* trial was a prior admission by ATC, the circuit court examined the three-part test set forth in *State v. Cardenas-Hernandez*, 219 Wis. 2d 516, 529-30, 579 N.W.2d 678 (1998). In *Cardenas-Hernandez*, our supreme court addressed whether prior statements made by a prosecutor were admissible under WIS. STAT. § 908.01(4)(b) as an admission by a party opponent in a subsequent criminal case against the same defendant. *Cardenas-Hernandez*, 219 Wis. 2d at 527. The supreme court adopted the requirements for admissibility of a prosecutor's prior statements in a subsequent criminal prosecution which were set forth in *United States v. McKeon*, 738 F.2d 26 (2nd Cir. 1984). *See Cardenas-Hernandez*, 219 Wis. 2d at 529-30, 532. ATC asserts that, because *Cardenas-Hernandez* applied the *McKeon* factors to statements by a prosecutor during a criminal proceeding, it "is not clear" whether the *McKeon* factors apply to statements made by an attorney in a civil proceeding. Kissack fails to reply to that argument in briefing in this court. Moreover, our supreme court gave no indication in *Cardenas-Hernandez* that the three *McKeon* requirements extend beyond criminal cases. *See id.* The *Cardenas-Hernandez* court stated:

> We are first asked to determine whether a defendant in a criminal proceeding may introduce into evidence as an admission by a party-opponent under WIS. STAT. § 908.01(4)(b) a statement made by a prosecutor in a prior criminal proceeding.
>
> ….
>
> To avoid such collateral consequences, we conclude that a court should not admit into evidence in a criminal proceeding a prior statement made by a prosecutor unless the court concludes that the three guidelines established in *McKeon* … are satisfied.

*Id.*, ¶¶13, 23. For the reasons mentioned in the text, we need not decide whether the analysis in *Cardenas-Hernandez* applies in a civil context.

concession of plaintiff's counsel during argument. *Id.* at 50. On appeal, this court determined that the circuit court's actions were error and prejudiced the plaintiff. *Id.* "We conclude that closing arguments of counsel are opinions only and cannot be construed as an admission" against counsel's client. *Id.* at 52.

¶77 We recognize that, in *Kuzmic*, counsel's statement made in closing argument was used against counsel's client in the same trial. But, we see no principled reason not to apply the same rule in a case in which, as here, the statement by counsel in closing argument is offered as a purported admission against that same client in a subsequent case.

¶78 Accordingly, we affirm the circuit court's decision to exclude from evidence the excerpt from ATC counsel's closing argument in *Wanat*.

## C. The Circuit Court Properly Excluded the Parties' Stipulation Before the Commission.

¶79 Kissack argues that the circuit court erred in excluding from evidence the parties' stipulation before the Commission.

### *1. Pertinent Facts.*

¶80 As noted, before the Commission, Kissack and ATC stipulated that the Kissack property had a fair market value of $20,000 per acre before the taking of the easement. Kissack sought to introduce evidence of that stipulation at trial in the circuit court, as an admission by a party opponent. *See* WIS. STAT. § 908.01(4)(b)1.-4.

¶81 ATC objected in the circuit court to admission of the stipulation. ATC argued that, through the stipulation, ATC had not admitted that the fair

market value of the Kissack property was $20,000 per acre for purposes of the jury's determination. Instead, ATC had intended "to expedite the [Commission] hearing and focus on the after [the taking fair market] value [of the property]."

¶82    The circuit court ruled that evidence of the stipulation was not admissible at trial.

> The Court -- it's clear to the Court that the purpose of that stipulation was to expedite those [Commission] proceedings and wasn't anticipated by [ATC] that that would mean that [ATC] would be bound by that in regards to the circuit court [trial].
>
> The Court would find the same thing for [Kissack], that [Kissack] would not be bound by that stipulation. If [Kissack] wanted to present information that it was higher, the Court would find the same, that the Court is -- because this is a de novo review, the Court is not going to be -- not going to bind the parties by those stipulations when it is specifically made to expedite those [Commission] proceedings.

The court went on to state:

> And I think it would cause confusion [for the jury] because then we would now have to explain everything that happened [in the Commission proceeding] prior to the matter coming to court today, and I find that that would not serve what the jury needs to determine for their verdict. Both parties have experts that can give valuation both of the before and after property value, and in the Court's mind that is sufficient so we don't need the information in regards to the stipulation.

### 2. Analysis.

¶83    Kissack's argument in this court as to why the parties' stipulation before the Commission constitutes an admission by ATC is that ATC "should have been held accountable for changing its position" at trial as to the fair market value of the property. Kissack's conclusory contention that ATC should be "held

accountable" in the present proceeding gives us no basis to overturn the circuit court's ruling that the stipulation was only intended to shorten the proceeding before the Commission and does not establish an admission by ATC to the fair market value of the Kissack property in the later jury trial. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (stating "we will not abandon our neutrality to develop arguments"); *see also Paine v. Chicago & N.W. Ry. Co.*, 217 Wis. 601, 6034, 258 N.W. 846 (1935) (stipulations entered into for the purpose of abbreviating trial were not intended to admit the issues as a matter of fact).

¶84   Moreover, the circuit court properly determined that allowing admission of the stipulation would "cause confusion" for the jury. *See* WIS. STAT. § 904.03.   Admission of evidence of the stipulation would have required a potentially lengthy explanation of the Commission procedures and, as the circuit court noted, the trial process in the circuit court was sufficient for the parties to present their positions to the jury without evidence of the stipulation.  Evidence of the Commission stipulation may have also raised questions for the jury about the result of the Commission proceedings, and that may have caused further confusion for the jury in making its findings.

¶85   Accordingly, we conclude that the circuit court did not err in excluding evidence of the stipulation.

## II.  Citation to and Reliance on an Unpublished Per Curiam Decision.

¶86   Kissack contends that the circuit court erred in permitting ATC to cite to an unpublished per curiam opinion of this court, and by "relying on" that opinion.

### A. Pertinent Facts.

¶87　ATC filed a motion in limine in the circuit court seeking an order prohibiting introduction of certain evidence at trial.　In support of its motion, ATC cited to the circuit court an unpublished per curiam opinion of this court, ***Goeman v. DOT***, No. 2016AP1362, unpublished slip op. (Wis. App. March 22, 2018). ATC argued in the circuit court that, although the ***Goeman*** opinion was not binding on the circuit court, ATC could cite the case to the circuit court as persuasive authority.　The record does not reflect that Kissack objected in the circuit court to ATC's citation to ***Goeman***.[26]

### B. Analysis.

¶88　Kissack's failure to object in the circuit court to ATC's citation to ***Goeman*** would, generally, forfeit Kissack's right to raise that challenge on appeal. *See **Rogers***, 196 Wis. 2d at 826.　However, we choose to address this issue in our discretion.　*See **Brander v. Allstate Ins. Co.***, 181 Wis. 2d 1058, 1067, 512 N.W.2d 753 (1994) (stating a reviewing court may consider forfeited issues in the court's discretion).

¶89　The parties' arguments require us to interpret statutes.　In interpreting statutes, Wisconsin courts begin "with the language of the statute.　If the meaning of the statute is plain, we ordinarily stop the inquiry." ***State ex rel.***

---

[26] In briefing in this court, Kissack asserts that it objected in the circuit court to ATC's citation to ***Goeman v. DOT***, No. 2016AP1362, unpublished slip op. (Wis. App. March 22, 2018), but Kissack gives us no record cite for that assertion. *See **Grothe v. Valley Coatings, Inc.***, 2000 WI App 240, ¶6, 239 Wis. 2d 406, 620 N.W.2d 463, *abrogated on other grounds by **Wiley v. M.M.N. Laufer Family Ltd. P'ship***, 2011 WI App 158, 338 Wis. 2d 178, 807 N.W.2d 236 (stating that this court need not consider an argument which does not contain citations to the record that support the argument).

*Kalal v. Circuit Ct. for Dane Cty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*; *see* WIS. STAT. § 990.01(1). WISCONSIN STAT. RULE 809.23(3)(a) provides that "[a]n unpublished opinion may not be cited in *any court* of this state as precedent or authority ... except as provided in par. (b)."[27] (Emphasis added.) RULE 809.23(3)(b) provides that:

> [A]n unpublished opinion issued on or after July 1, 2009, that is authored by a member of a three-judge panel or by a single judge under [WIS. STAT. §] 752.31(2) may be cited for its persuasive value. A per curiam opinion … is not an authored opinion for purposes of this subsection.

RULE 809.23(3) is clear that unpublished, per curiam opinions such as *Goeman* may not be cited to *any* court as persuasive authority, which would include the circuit court. By citing *Goeman* to the circuit court, ATC violated RULE 809.23(3)(a). However, we conclude that the circuit court did not rely on *Goeman* in its ruling.

¶90 As noted, Kissack asserts that the circuit court relied on *Goeman* in deciding the motion in limine. But, Kissack fails to point to any information in the record to establish that the circuit court relied on that opinion. This court need not consider arguments that are unsupported by adequate factual citations. *See Grothe v. Valley Coatings, Inc.*, 2000 WI App 240, ¶6, 239 Wis. 2d 406, 620 N.W.2d 463, *abrogated on other grounds by Wiley v. M.M.N. Laufer Family Ltd. P'ship*,

---

[27] WISCONSIN STAT. RULE 809.23(3)(a) provides that an unpublished opinion may be cited "to support a claim of claim preclusion, issue preclusion, or the law of the case." ATC does not discuss whether ATC could properly cite to *Goeman* to support any of those claims, and we ignore that language in the Rule.

2011 WI App 158, 338 Wis. 2d 178, 807 N.W.2d 236. We have, nevertheless, reviewed the circuit court's ruling on ATC's motion in limine and have found only the following, single reference to *Goeman* by the court: "In addition, [Kissack] state[s] that the [holding in the] *Goeman* case should not apply in this matter ...." The circuit court's quoted statement does not establish that the circuit court relied in any way on the *Goeman* opinion.

¶91    Accordingly, we conclude that ATC's citation of the *Goeman* opinion to the circuit court violated WIS. STAT. RULE 809.23(3)(a), but the circuit court did not rely on that opinion in ruling on ATC's motion in limine.

## CONCLUSION

¶92    For the foregoing reasons, we reverse the judgment of the circuit court and remand this matter for further proceedings.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

Not recommended for publication in the official reports.