COURT OF APPEALS
DECISION
DATED AND FILED

April 1, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2021AP98**
**2021AP99**

Cir. Ct. Nos. **2019TP1**
**2019TP2**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

APPEAL NO. 2021AP98

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.J.G.,
A PERSON UNDER THE AGE OF 18:

JACKSON COUNTY DEPARTMENT OF HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

M. M. B.,

RESPONDENT-APPELLANT.

**APPEAL NO. 2021AP99**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO C.K.G.,
A PERSON UNDER THE AGE OF 18:**

**JACKSON COUNTY DEPARTMENT OF HUMAN SERVICES,**

    **PETITIONER-RESPONDENT,**

  **V.**

**M. M. B.,**

    **RESPONDENT-APPELLANT.**

APPEALS from orders of the circuit court for Jackson County: RIAN RADTKE, Judge. *Affirmed*.

¶1    FITZPATRICK, P.J.[1]  M.M.B. appeals orders of the Jackson County Circuit Court terminating her parental rights to J.J.G. and C.K.G. The circuit court found M.M.B. unfit following M.M.B.'s stipulation that grounds existed for the involuntary termination of her parental rights to each child. A dispositional hearing was held after which the court found that termination of M.M.B.'s parental rights was in the children's best interests. M.M.B. contends that she is entitled to a new dispositional hearing because: (1) the circuit court erred by admitting at the dispositional hearing the testimony of a psychologist; and

---

[1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

These appeals were consolidated on this court's own motion in a February 26, 2021 order pursuant to WIS. STAT. RULE 809.10(3).

(2) her due process rights were violated because the circuit court failed to properly conduct the dispositional hearing. I reject M.M.B.'s arguments and affirm the orders terminating her parental rights to J.J.G. and C.K.G.

## BACKGROUND

¶2 The following facts are undisputed.

¶3 In February 2019, the Jackson County Department of Human Services filed petitions to terminate M.M.B.'s parental rights to J.J.G. and C.K.G. In each petition, the County alleged that grounds existed for involuntary termination of M.M.B.'s parental rights under WIS. STAT. § 48.415(2), based on a continuing need of protection or services.[2]

¶4 At a hearing held in November 2019, M.M.B. stipulated to the existence of grounds for the termination of her parental rights, but requested a contested hearing on the dispositional phase of the proceedings. The circuit court accepted M.M.B.'s stipulation after finding that M.M.B.'s decision was made knowingly, voluntarily, and intelligently. Upon the parties' agreement, testimony establishing a factual basis for grounds for terminating M.M.B.'s parental rights was presented at a subsequent hearing.

¶5 A hearing on disposition was held in March 2020. At the dispositional hearing, the County presented the testimony of Dr. Stephan Dal Cerro, a clinical psychologist who prepared an evaluation of M.M.B.'s

---

[2] The parental rights of the father to these children were terminated. Those terminations of parental rights are not at issue in this appeal.

3

"psychosocial functioning, including issues related to parenting and substance abuse" in May 2018. Dr. Dal Cerro testified telephonically due to his illness.

¶6    M.M.B.'s trial counsel objected to Dr. Dal Cerro's testimony on the following three bases: (1) M.M.B. was not provided notice that Dr. Dal Cerro would testify telephonically; (2) a witness list had not been provided to M.M.B.; and (3) Dr. Dal Cerro's 2018 evaluation was not performed contemporaneous to the dispositional hearing and, therefore, his testimony concerning that evaluation was not relevant to the issue of whether termination of M.M.B.'s parental rights was in the children's best interests. The County responded that Dr. Dal Cerro's testimony was relevant to some of the statutory factors the court must consider in determining whether termination of M.M.B.'s parental rights was in the children's best interests, including whether either child had a substantial relationship with M.M.B., and whether either child would enter into a more stable and permanent family relationship if M.M.B.'s parental rights were terminated. *See* WIS. STAT. § 48.426(3)(c) and (f).

¶7    The circuit court overruled M.M.B.'s objections to Dr. Dal Cerro's testimony. The court explained its reasoning as follows:

> There's no scheduling order in this matter that would say there's a requirement that witness lists and such be exchanged and I don't see any other requirement under the law and so I'm going to deny that request. Ordinarily doctors do testify by telephone in proceedings and having the stomach flu is a valid reason for a last-minute request to appear by telephone.

The circuit court did not specifically address M.M.B.'s argument that Dr. Dal Cerro's testimony was not relevant.

4

¶8    The County also presented the testimony of other witnesses including Heather Wilcox, J.J.G. and C.K.G.'s social worker. M.M.B. testified in her own defense and presented the testimony of several other witnesses who testified concerning M.M.B.'s parenting, her employment, and her sobriety.

¶9    At the conclusion of the dispositional hearing, the circuit court found that termination of M.M.B.'s parental rights was in the best interests of J.J.G. and C.K.G. In reaching that decision the court explicitly considered each of the statutory factors set forth in WIS. STAT. § 48.426(3). M.M.B. appeals.

## DISCUSSION

¶10    M.M.B. contends that she is entitled to a new dispositional hearing for the following two reasons: (1) the circuit court erred in admitting Dr. Dal Cerro's testimony because that testimony was not relevant;[3] and (2) the dispositional hearing violated M.M.B.'s due process right to a "two-phase termination of parental right proceeding." I begin by setting forth governing principles and the standard of review.

## I.  Principles Governing Termination of Parental Rights, Evidentiary Rulings, and Standard of Review.

¶11    "Wisconsin has a two-part statutory procedure for the involuntary termination of parental rights." *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271

---

[3] M.M.B. does not renew on appeal her arguments that Dr. Dal Cerro's testimony was inadmissible because she was not provided notice that Dr. Dal Cerro would be testifying telephonically and she was not provided a witness list. Accordingly, I do not address whether Dr. Dal Cerro's testimony was inadmissible for those reasons. *See State v. Allen*, 2004 WI 106, ¶26 n.8, 274 Wis. 2d 568, 682 N.W.2d 433 (declining to address issues not raised on appeal).

Wis. 2d 1, 678 N.W.2d 856. The first phase is "the fact-finding hearing 'to determine whether grounds exist for the termination of parental rights.'" *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶24, 255 Wis. 2d 170, 648 N.W.2d 402 (quoting WIS. STAT. § 48.424(1)). During this phase, "the petitioner must prove by clear and convincing evidence that one or more of the statutorily enumerated grounds for termination of parental rights exist." *Steven V.*, 271 Wis. 2d 1, ¶24.

¶12 At the conclusion of the fact-finding hearing, a jury or the circuit court determines "whether any grounds for the termination of parental rights have been proved." WIS. STAT. § 48.424(3). "If grounds for the termination of parental rights are found by the court or jury, the court shall find the parent unfit." Sec. 48.424(4).

¶13 "A finding of parental unfitness is a necessary prerequisite to termination of parental rights, but a finding of unfitness does not necessitate that parental rights be terminated." *Steven V.*, 271 Wis. 2d 1, ¶26. To determine if parental rights should be terminated, the proceeding moves to the second phase, a dispositional hearing. *Julie A.B.*, 255 Wis. 2d 170, ¶28; *see* WIS. STAT. § 48.427. "The outcome of this hearing is not predetermined, but the focus shifts to the interests of the child." *Julie A.B.*, 255 Wis. 2d 170, ¶28; *see* WIS. STAT. § 48.426(2). After the dispositional hearing, the court may enter an order terminating the parental rights of the parent, or it may dismiss the petition if it finds that the evidence does not warrant termination. *Julie A.B.*, 255 Wis. 2d 170, ¶28; *see* § 48.427(2)-(3). In making its determination regarding disposition, the circuit court must consider the following statutory factors, as well as any other factors the circuit court determines are applicable:

(a) The likelihood of the child's adoption after termination.

(b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.

(c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.

(d) The wishes of the child.

(e) The duration of the separation of the parent from the child.

(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

Sec. 48.426(3).

¶14     This court will not overturn a circuit court's decision on disposition in a termination of parental rights proceeding unless the circuit court erroneously exercised its discretion. *David S. v. Laura S.*, 179 Wis. 2d 114, 150, 507 N.W.2d 94 (1993). This court also reviews the circuit court's evidentiary rulings for an erroneous exercise of discretion. *State v. Meehan*, 2001 WI App 119, ¶23, 244 Wis. 2d 121, 630 N.W.2d 722. "The burden to demonstrate an erroneous exercise of discretion rests with the appellant." *Winters v. Winters*, 2005 WI App 94, ¶18, 281 Wis. 2d 798, 699 N.W.2d 299. A court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law and, using a rational process, reaches a conclusion that a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982). "Although the proper exercise of discretion contemplates that the circuit court explain its reasoning, when the court does not do so, [this court] may search the record to

determine if it supports the [circuit] court's discretionary decision." ***Randall v. Randall***, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737; *see **Hedtcke v. Sentry Ins. Co.***, 109 Wis. 2d 461, 470, 326 N.W.2d 727 (1982).

¶15    In addition, the circuit court's discretionary decision to admit evidence is subject to the harmless error rule, which is a question of law reviewed de novo by this court.  *See **Evelyn C.R. v. Tykila S.***, 2001 WI 110, ¶35, 246 Wis. 2d 1, 629 N.W.2d 768 (applying harmless error analysis in a TPR proceeding); ***State v. Hunt***, 2014 WI 102, ¶21, 360 Wis. 2d 576, 851 N.W.2d 434 (stating whether error was harmless is a question of law reviewed de novo).  An error is harmless if it did not affect the substantial rights of the party. ***Evelyn C.R.***, 246 Wis. 2d 1, ¶28.  "For an error to affect the substantial rights of a party, there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue." ***Id.***

## II.  Dr. Dal Cerro's Testimony.

¶16    M.M.B. argues that the circuit court's decision to admit Dr. Dal Cerro's testimony was erroneous because the court's decision was not based on a rational process in that the court failed to address the relevancy of Dr. Dal Cerro's testimony when the court overruled M.M.B.'s objection to that testimony.  The circuit court, in giving its oral ruling on M.M.B.'s objection, did not state its reasoning about relevancy as clearly as it might have.  However, a circuit court's failure to adequately explain its reasoning underlying a discretionary decision does not require reversal of the court's decision.  Instead, I may search the record to determine whether the record supports the court's discretionary decision. ***Randall***, 235 Wis. 2d 1, ¶7.  Doing so here, I conclude that the record supports the court's decision to overrule M.M.B.'s relevancy objection to Dr. Dal Cerro's testimony.

¶17    "All relevant evidence is admissible, except as otherwise provided by the constitutions of the United States and the state of Wisconsin, by statute, by these rules, or by other rules adopted by the supreme court." WIS. STAT. § 904.02. WISCONSIN STAT. § 904.01 broadly defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pertinent to this appeal, M.M.B. did not contend in the circuit court that Dr. Dal Cerro's testimony was inadmissible for any reason other than its purported irrelevancy. Accordingly, the issue before me is whether Dr. Dal Cerro's testimony tended to make the existence of any fact of consequence at the dispositional hearing more or less probable. I next summarize Dr. Dal Cerro's testimony.

¶18    Dr. Dal Cerro testified to the following at the dispositional hearing. In May 2018, he prepared a "psychological assessment, with an additional focus on both parenting issues and AODA, alcohol and other drug abuse" about M.M.B. Dr. Dal Cerro diagnosed M.M.B. with substance abuse disorder, generalized anxiety disorder, and avoidance personality disorder. He addressed how M.M.B.'s substance abuse and avoidance personality disorder impacted her parenting. Dr. Dal Cerro stated that substance abuse impacts a person's ability to parent in that it preoccupies the parent's attention and affects his or her judgment. M.M.B., as a result of her substance abuse, "became less and less engaged in parenting and her judgment was affected so that her children were being exposed to extremely harsh and negligent conditions." As to M.M.B.'s avoidance personality disorder, Dr. Dal Cerro stated:

> Avoidant personality would affect [M.M.B.'s] parenting in that it would make her less responsive to conditions, the problems or challenges that she's facing. She would absent

9

herself from engaging in the problems that exist and that pattern is highly conducive to use of substances because substances are kind of the ultimate escape from problems, the ultimate avoidance.

¶19    On cross-examination, Dr. Dal Cerro acknowledged that he had not had contact with M.M.B. since before May 2018, but stated that he had reviewed M.M.B.'s "most recent reports from Social Services, the petition and the updates," which included "logs of [M.M.B.'s] recent chemical testing history." Dr. Dal Cerro answered in the affirmative when he was asked whether the opinions reflected in his 2018 evaluation "may not be relevant" if M.M.B. had "experienced sustained recovery both as to her substance abuse disorder and her mental health condition," and Dr. Dal Cerro acknowledged that he "was not updated" on M.M.B.'s current mental health condition or on whether she was "attending to her substance abuse issues." However, when asked if he agreed that M.M.B.'s "recent chemical testing history is essentially clean," Dr. Dal Cerro stated: "No, I would not" because "there were a number of no-shows, which is suggestive, and then there were a fairly large number of specimens too dilute to ensure accurate result, which is interpreted for me to indicate that she was trying to manipulate the results."

¶20    I agree with the County that Dr. Dal Cerro's testimony was relevant to WIS. STAT. § 48.426(3)(f), which directs the court to consider whether a child would "be able to enter into a more stable and permanent family relationship as a result of the termination." Dr. Dal Cerro's testimony that M.M.B.'s substance abuse and mental health problems, to the extent she continues to suffer from those problems, would impact M.M.B.'s ability to respond to problems concerning the children goes directly to the question of whether terminating M.M.B.'s parental rights would place the children in a more stable family relationship, which is a

"fact that is of consequence to the determination" of the children's best interests. *See* WIS. STAT. § 904.01.

¶21    M.M.B. argues that Dr. Dal Cerro's testimony cannot be relevant because the evaluation conducted by Dr. Dal Cerro was conducted two years before the dispositional hearing and was therefore "temporally irrelevant." While that observation goes to the weight the circuit court might give to the opinions, M.M.B. fails to identify any reason, under the facts of this case, that the passage of time rendered Dr. Dal Cerro's testimony based mostly on an evaluation performed in 2018 no longer relevant. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (declining to address undeveloped arguments). Moreover, M.M.B.'s argument ignores the fact that Dr. Dal Cerro testified that, prior to testifying, he had reviewed M.M.B.'s "recent reports … [and] updates."

¶22    M.M.B. also argues on appeal that Dr. Dal Cerro's testimony is not relevant because he lacked "specialized knowledge" to provide insight as to any of the factors set forth in WIS. STAT. § 48.426(3). *See generally* WIS. STAT. § 907.02(1) ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise …."). Fatally for her argument, M.M.B. does not point to any objection from her in the circuit based on a lack of "specialized knowledge" of Dr. Dal Cerro, and my independent search of the record has revealed that M.M.B. did not. M.M.B. has thus forfeited her right to raise this issue on appeal. *See State v. Rogers*, 196 Wis. 2d 817, 826-29, 539 N.W.2d 897 (Ct. App. 1995) (stating issues not raised before the circuit court are not considered on appeal).

¶23    Therefore, I reject M.M.B.'s argument that Dr. Dal Cerro's testimony was not relevant to any issue at the dispositional hearing. However, even if M.M.B. is correct that Dr. Dal Cerro's testimony was not relevant, I would conclude that admission of his testimony was harmless. *See* WIS. STAT. § 901.03(1). The circuit court did not reference Dr. Dal Cerro's testimony in its explanation of why the court found that terminating M.M.B.'s parental rights was in the children's best interests, and M.M.B. does not point this court to any evidence that Dr. Dal Cerro's testimony influenced the court's decision. In short, there is no evidence that Dr. Dal Cerro's testimony contributed to the circuit court's pertinent findings and, as a result, Dr. Dal Cerro's testimony cannot be said to have affected M.M.B.'s substantial rights. *See Evelyn C.R.*, 246 Wis. 2d 1, ¶28.

### III. Due Process Argument.

¶24    M.M.B. contends that her due process rights were violated because the circuit court "did not conduct a two-phase termination of parental rights proceeding as required by statute and case law." More particularly, M.M.B. asserts that the circuit court "impermissibly revisited" the issue of unfitness at the dispositional hearing, contrary to *Julie A.B.*, 255 Wis. 2d 170, ¶28, when the circuit court permitted Dr. Dal Cerro to testify and, by doing so, violated her due process rights. Contrary to M.M.B.'s assertion, our supreme court did not hold in *Julie A.B.* that facts relevant to the grounds phase of the proceeding cannot be considered, or "revisited," during the dispositional phase of the proceeding.

¶25    Here, the circuit court considered each of the factors identified WIS. STAT. § 48.426(3), as required by *Julie A.B.*, in light of the evidence presented at the dispositional hearing.

¶26    The first factor is the likelihood of the children's adoption. *See* WIS. STAT. § 48.426(3)(a). The circuit court found that the likelihood of the children's adoption was "very high." The court stated that uncontroverted testimony was given that the children's foster parents were willing to adopt the children and had been approved for adoption.

¶27    The second factor is the age and health of the child at the time of removal from the home and at the time of disposition. *See* WIS. STAT. § 48.426(3)(b). The circuit court found that J.J.G. was removed from M.M.B.'s home when he was three and that he was five at the time of the dispositional hearing. The court found that C.K.G. was removed from M.M.B.'s home when she was two and that she was four at the time of the dispositional hearing. As to health, the court found that the only evidence presented concerned "anger issues" and "some hyperactivity" suffered by J.J.G. but, other than that, the children were "healthy."

¶28    The third factor is whether the child has a substantial relationship with the parent and whether it would be harmful to the child to sever that relationship. *See* WIS. STAT. § 48.426(3)(c). The circuit court found that M.M.B. has a relationship with J.J.G. and C.K.G., but that the relationship is "that of somebody who comes and visits and plays with them," and the children do not otherwise have a relationship with M.M.B.

¶29    The fourth factor is the wishes of the children. *See* WIS. STAT. § 48.426(3)(d). The circuit court found that the children were "too young to express any wishes."

¶30    The fifth factor is the duration of the parent's separation from the child. *See* WIS. STAT. § 48.426(3)(e). The circuit court found that the children

13

had been removed from M.M.B.'s home for "roughly two-and-a-half years, maybe a little more."

¶31   The sixth factor is whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination.  *See* WIS. STAT. § 48.426(3)(f).  About that factor, the circuit court stated:

> Everything I've heard today is that [the home in which the children have been placed] is a stable home, that is a home that is safe, a safe, loving home, it's been described as where the children's needs are provided.   The past placement with mother, [M.M.B.], had a number of issues, abuse and neglect, and there hasn't been any placement with [M.M.B.] since the out-of-home placement back in July of 2017.  There has been visitation, but I think it's clear that as things sit today that the children would enter into a more stable and permanent family relationship as a result of the termination in the [foster parents'] home; and the testimony is that [M.M.B.] is not able, is not ready to have the children yet, that it's going to be a long process to--to reunify and bring the children home, and so as things sit today I find the children would enter into a more stable and permanent family relationship as a result of the termination.

¶32   In addition to the six factors identified in WIS. STAT. § 48.426(3), the circuit court considered efforts made by M.M.B. to improve herself.  The court stated that "in the middle of last year" M.M.B. began "making steps in the right direction" by "starting to take life seriously and trying to figure out how to do it healthy and realizing that the way [she'd] been doing it is not healthy … [and] not good for [her] kids."   However, the court also found that, at the time of the dispositional hearing, M.M.B. was unable to show that she was "stable."   The court determined that, "looking at all of the factors the Court is to consider" and the court's findings on those factors, termination of M.M.B.'s parental rights was in the children's best interests.

14

¶33    M.M.B. argues that the circuit court applied the incorrect standard by basing its decision at the dispositional hearing on her unfitness and not considering the children's best interests.  To the contrary, the record reflects that the circuit court carefully considered each of the best interest factors set forth in WIS. STAT. § 48.426(3), as well as other factors the circuit court considered relevant, in light of the facts presented at trial.  Accordingly, I conclude that M.M.B.'s due process argument is without merit.[4]

## CONCLUSION

¶34    For the foregoing reasons, the orders of the circuit court are affirmed.

*By the Court.*—Orders affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[4] I have been informed by the Clerk of the Court of Appeals that M.M.B.'s counsel did not file a reply brief in this matter.  I could accept the County's arguments in total based on that lack of reply.  *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (stating arguments asserted by a respondent and not disputed by the appellant in the reply brief are taken as admitted).  However, as is shown above, I have considered each of the arguments advanced by M.M.B. in her brief-in-chief.